# Saunders *v.* McDonough, *et al.*

*Bill for Injunction and Accounting.*

(Decided November 7, 1914.  Rehearing denied December 14, 1914.
67 South. 591.)

1. *Partnership; Joint Adventure; Difference.*—A partnership is ordinarily formed for the transaction of a general business of a particular kind, while a joint adventure relates to a single transaction although it may comprehend a business to be continued for a period of years.

2. *Joint Adventures; Remedy of Parties.*—One party to a joint adventure, may sue another, in an action at law, for a breach of the contract, for a share of the profits or losses or a contribution for advances made in excess of his share, and such action will not preclude a suit in equity for an accounting.

3. *Same; Implied Contract.*—A contract of joint adventure need not be expressed, but may be implied from the conduct of the parties.

4. *Same; Good Faith; Individual Benefit.*—So far as mutual good faith and accountability is concerned, the relation of co-adventurers is governed by the law of partnership, which exacts of all the utmost good faith in the prosecution of the common enterprise, and forbids the accrual of any advantage therein to one member which is not shared by his associates.

5. *Same; Agreement Creating Relation.*—Where certain persons holding an option on mining lands hired the broker to market it with the stipulation that, if a corporation is formed, complainant was to get a percentage of the capital stock, or to have a right to join in buying the land after the expiration of the agreement, and nothing was done at the date of the termination of the contract, but thereafter the broker devised a plan to organize a corporation which should acquire the land by the issuance of its stocks and bonds, and the capital stock of which should be divided among the associates, and the agreement was accepted by all the parties, each agreeing to use his best efforts to cause the same, or a modification of the same, to be carried out, such parties were joint adventurers.

6. *Same; Right of Parties; Refusal to Carry Out Contract.*—Where a contract was entered into under such an agreement with the owners of the land by which a corporation was formed to take over the land, etc., but the owner refused to carry out the agreement at the time agreed, the broker could not be deprived of his rights therein by a modified agreement, substantially similar to the one devised by him, and entered into by the corporation and the owners.

7. *Same; Refusal to Perform; Remedy.*—If one associated in a joint adventure refuses to substantially perform his obligation, his associates may terminate their relations with him and themselves carry out the enterprise to his exclusion, with an action against him for damages, or they can sue him for money or property agreed to be contributed to the common fund, or to be supplied for a specified purpose, but they cannot do both.

8. *Same; Termination of Relation; Notice.*—Even if a valid reason exists for terminating a joint adventure as to a member, it cannot be done unless notice is given to such member.

9. *Same; Failure to Make Contribution; Right to Proceeds.*—Where, after the accomplishment of the enterprise, a party to a joint adventure fails, on reasonable notice or demand, to contribute his proportion to the expenses thereof, he cannot invoke the aid of a court to secure a share of the proceeds; but the mere fact that some of the parties paid all the expenses or furnished all the money used would not exclude non-participating associates from a share of the proceeds.

10. *Same; Pleading; Presumption.*—Where the bill was to recover shares of proceeds of a joint adventure, and it does not show that the relationship had terminated, it will be presumed as a matter of law that it has not terminated.

11. *Same; Contribution; Tender.*—Although a joint adventurer refuses to participate in a common enterprise, if, before receiving notice of the termination of the relation as to him, he repents, and tenders whatever contributions are due from him as co-adventurer, his rights are preserved.

12. *Same; Presumption.*—A contract of a joint adventurer is not indefinite because the amount of pecuniary contribution to be paid by each of the parties is not stipulated as the presumption will be indulged that all expenses are to be shared equally.

13. *Vendor and Purchaser; Contracts; Preamble.*—Where there is nothing in a contract to rebut the inference that a mutual contract

[Saunders v. McDonough, et al.]

of sale and purchase was intended, a preamble to the contract reciting that A and others are to sell, and S and others are to buy, is conclusive; the preamble being a part of the contract.

14. *Same; Conditions Precedent; Vendee.*—Although a contract for a sale of lands depends upon the performance of obligations, made a condition precedent to performance by the vendor, the vendee has an inchoate equity which becomes vested on the performance of the conditions precedent.

15. *Same; Waiver.*—Where the vendors in a contract of sale of land notified the purchasers that they will not perform, the duty on the purchaser to tender performance of conditions precedent or concurrent is waived.

16. *Same; Pleading.*—To prevent the extinction of the inchoate equities of vendees in a contract for sale of land, dependent on performance of conditions precedent by expiration of time limited, the refusal of vendors to perform and the willingness of the vendees to perform must be pleaded.

17. *Specific Performance; Nature of Agreement; Contract for Sale of land.*—An agreement for the sale of mining properties, conveyance thereof to be made to a corporation to be formed, with conditions that bonds be issued by the corporation for a portion of the price, with provisions for a sinking fund, and the balance of the price paid by a division of the treasury stock, and that the corporation should develop and operate the property, and that the corporation should lend or procure loans for the vendors, secured by personal note, etc., cannot be specifically enforced since the provisions thereof could not be adequately enforced by a court of equity.

18. *Equity; Pleading; Demurrer; Partly Good.*—Where the demurrers are addressed to the whole bill, they cannot be sustained, although correctly raising the point that an alternative phase of the bill shows no equity.

19. *Joint Adventure; Performance; Pleading.*—The rule that a complainant, in order to show a right to share in the proceeds of the joint enterprise, must either allege that he has performed his full share of all the acts incident to the accomplishment of the enterprise in accordance with the common agreement, or else that he stood at all times ready and willing to do so, is not applicable to joint adventures; such rule is applicable only to suits between parties to ordinary contracts where the obligations of complainant are precedent or concurrent.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by Warwick Saunders against R. N. McDonough and others, to restrain and enjoin the selling, pledging, or transferring of certain shares of capital stock and bonds of the Self-Fluxing Ore & Iron Company, and for an accounting and other relief. From a

decree sustaining demurrers to the bill, complainant appeals. Affirmed in part, and reversed and rendered in part.

The averments of the bill sufficiently appear from the opinion of the court. Exhibit A to the bill is as follows: This memorandum of agreement made in triplicate, bearing date November 26, 1912, the same being in lieu thereof and as substitute for the terms of an agreement heretofore entered into between W. F. Aldrich and associates, of the one part, and John J. Shannon and R. N. McDonough, for themselves and associates, of the other part, said substituted agreement expiring January 1, 1913, wherein the said Aldrich and associates are to sell, and said Shannon and McDonough and associates are to buy, a certain tract of about 1,550 acres. [Here follows description by government subdivision.] We, the said W. F. Aldrich and associates [John Towers] propose and offer as follows: That for and in consideration of one dollar in hand paid and other valuable consideration, the receipt whereof is hereby acknowledged, agree to convey by general warranty deed free from all incumbrance, and with good and sufficient merchantable title, all of said lands to the McDonough Ore & Mining Company or such other corporation as the grantors may designate, on or before January 2, 1913, as the grantee may elect, and accept as full and complete payment therefor three thousand dollars in first mortgage, thirty-year, semiannual, 6 per cent. gold bonds to be issued by the grantee corporation: Provided said bond issue shall constitute the entire issue and to be of the denomination of one thousand dollars each. The said interest to begin January 1, 1913, and payable semiannually thereafter. And provided further that said bonds shall be the first mortgage lien on said lands to be hereby conveyed as afore-

said. And provided further that said corporation shall take the necessary and substantial steps to develop and operate the said property within a reasonable time, now estimated to be within the next ninety days. And provided further that said grantee corporation shall provide in said bond issue an adequate sinking fund to retire the said bonds at maturity, said sinking fund to begin within five years from date of said bonds. And provided further that said bonds are subject to call and cancellation by said grantee corporation at any interest bearing date upon giving sixty days' notice at per plus 5 per cent. The title deeds to be deposited with the Birmingham Trust & Savings Bank, who are to be the trustees under the above said mortgage and bond issue. Said deeds to be delivered to said grantee corporation at the same time the bonds are delivered to said parties of the first part. And as further purchase price of said lands, the said grantee corporation agrees to issue or pay to said parties of the first part, W. F. Aldrich and John Towers, fifty thousand dollars in the capital stock of said grantee corporation, the same to be taken out of the treasury stock of said grantee corporation at the same price the said treasury stock shall be offered for sale. And provided further that the said grantee corporation hereby agrees to lend or negotiate loans for said parties of the first part, to wit: W. F. Aldrich and John Towers, as follows: Twenty-five thousand dollars by January 2, 1913, fifteen thousand by February 1, 1913, and ten thousand by March 1, 1913. Each of said loans payable on or before date of said loans at 6 per cent. interest. The said parties of the first part, W. F. Aldrich and John Towers, in order to secure said loans, hereby agree to furnish for each of said loans the said first mortgage bonds as collateral on a basis of seventy-five cents on the dollar and in

sufficient amounts to equal the amount of each of said loans, together with their, the said first parties, W. F. Aldrich and John Towers, personal notes for like amounts of each of said loans and running for the same length of time and bearing the same rate of interest of 6 per cent. However, it is expressly agreed by parties hereto that the said grantee corporation shall have the right to retire and cancel said fifty thousand dollars or any number thereof of said bonds so used as collateral security for said loans at par and accrued interest, and the proceeds from such redemption of said bonds to be applied as payment on said loans. It is hereby mutually agreed and understood by and between all parties hereto that all conveyances, bonds, mortgages, and such other papers and documents as may be necessary to the closing of the foregoing transaction shall be prepared, and the same executed and exchanged as early as practicable, and not later than January 2, 1913. It is mutually understood and agreed that all parties hereto shall, at their option, be elected to and remain directors of the said grantee corporation, or its assigns, for the term of three years from its organization. It is also agreed that Attorney E. J. Smyer shall be the attorney to pass upon the title of said lands and all other papers necessary and incident to the completion of this transaction. The above clause and all corrections and interlineations were made before signing.

TILLMAN, BRADLEY & MORROW, and W. B. WHITE, for appellant.

GARBER & GARBER, and H. C. SELHEIMER, for appellee.

SOMERVILLE, J.—(1-3) "The subject of joint adventures is of comparative modern origin. It was un-

known at common law, being regarded as within the principles governing partnerships. While some courts hold that a joint adventure is not identical with a partnership, it is regarded as of a similar nature, and governed by the same rules of law. One distinction lies in the fact that, while a partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint adventure relates to a single transaction, although the latter may comprehend a business to be continued for a period of years. * * *. The principal distinction, however, is that in most jurisdictions, where any is regarded as existing, one party may sue the other at law for a breach of the contract or a share of the profits or losses or a contribution for advances made in excess of his share; but this right will not preclude a suit in equity for an accounting. The contract need not be express, but may be implied from the conduct of the parties."—23 Cyc. 453, A. This text is well supported by the numerous authorities cited.

(4) So far as the questions of mutual good faith and accountability are concerned, the authorities are unanimous in holding that the relation of coadventurers is governed by the law of partnerships, which exacts of all the utmost good faith and fairness in the prosecution of the common enterprise, and forbids the accrual of any profit or advantage therein to one member which is not shared by his associates.—*Berry v. Colborn*, 65 W. Va. 493, 64 S. E. 636, 17 Ann. Cas. 1018, and note; *Jones v. Kinney*, 146 Wis. 130, 131 N. W. 339, Ann. Cas. 1912C, 200, and note; *Botsford v. Van Riper*, 33 Nev. 191, 110 Pac. 705; *Edwards v. Johnson*, 90 S. C. 90, 72 S. E. 638; 23 Cyc. 455, A.

The complainant's bill, in its primary aspect, seeks an accounting by certain of the respondents for the

proceeds of an alleged joint adventure, undertaken by complainant and the said respondents as his associates, and completed by his associates alone without his participation in its final stages; the allegation being that his said associates have received in that behalf $1,000,-000 in certificates of corporate stock, in which complainant is entitled to share equally with them, and from which he has been by them excluded.

In its secondary aspect, the bill seeks, by alternative prayer, to compel the specific performance of a certain contract, by the terms of which he and his associates were to buy, and the other respondents, Aldrich and Towers, were to sell to them, a valuable tract of mineral land, to be conveyed to a corporation to be organized, and which land was to be the basis for the issuance of the capital stock in which complainant and his associates were to share; the allegation being that this contract had been wrongfully breached and repudiated by the vendors, who, however, shortly afterwards executed the contract in a modified form for and with complainant's said associates, without complainant's participation therein. These vendors, and complainant's four alleged coadventurers, and also the corporation organized by them to hold and develop the lands purchased, are made parties respondent to the bill.

(5) The foundation for complainant's rights, as here asserted, are in substance thus stated by the bill:

The respondents R. N. McDonough, J. H. McDonough, W. A. Porter, and J. J. Shannon, had an option for the purchase of certain lands from the respondents Aldrich and Towers, and in February, 1912, McDonough and associates engaged complainant as a broker to market and sell these lands. Later, in July, 1912, they gave him an exclusive written commission to procure a sale. This commission, accepted and

signed by complainant, contained these stipulations: "This agreement will be considered in force and effect until the 15th day of November, 1912. We will further agree that, in the event we decide it is to the best interest of all parties to this agreement to form a corporation with the view of purchasing the lands mentioned above, we will allow the privilege of bonding the lands to enable us to develop and mine the ore. If you are successful in this undertaking, we will give you 33 per cent. of the corporation's stock, after all incumbrances, including our profits, together with your pro rata, are paid on the properties. In the event we should sell either tract of the land by November 15, 1912, or no sale be effected, we will give you the option or right to join us in the purchase of either or both tracts of land at the same rate per acre as we pay, to the extent of 20 per cent. of same."

No sale was effected before November 15, 1912, but about October 26, 1912, complainant devised and proposed to said associates a plan to organize a corporation which should acquire these lands by the issuance of its stock and bonds, whereby it was contemplated that complainant and his associates should receive approximately $1,000,000 par value of the capital stock to be equally divided between them. This plan was accepted by said associates, "and your orator and his said associates thereupon mutually agreed to use their best efforts to cause the same, or some modification thereof, to be carried out and to divide equally, one-fifth to each, the proceeds received by them pursuant to the same or to any modification thereof, and (that) all transactions thereafter had between your orator and his said associates were had in contemplation of such mutual agreement and pursuant thereto."

Thereupon complainant negotiated with respondents Aldrich and Towers, procured them to cancel their pending option agreement, and to execute and deliver to complainant and said associates an agreement for the sale and purchase of these lands, upon terms therein fully specified (this document is Exhibit A to the bill, and the reporter will set it out in full). This agreement was in turn executed and delivered to said Aldrich and Towers by complainant and his said associates. By its terms it was to be performed on or before January 1, 1913.

Pursuant to this agreement (of November 26th), the respondent corporation, the Self-Fluxing Ore & Iron Company, was organized on or about December 30, 1912, with an authorized capital stock of $3,000; and on or about January 3, 1913, its authorized capital stock was increased to $1,500.000. On or about the same day said corporation duly authorized an issue of first mortgage 6 per cent. gold bonds.

In the meantime, on or about December 20, 1912, said Aldrich and Towers notified complainant and his said associates that "they declined to perform said agreement dated November 26, 1912, according to its terms, conditions, and covenants," and said agreement was, in fact, not performed by them on or before January 3, 1913.

On or about January 3, 1913, complainant's said associates "proceeded without any participation therein by your orator to carry out and perform said agreement dated November 26, 1912, substantially in accordance with the terms thereof, except that they attempted to modify their obligations, covenants, and conditions therein, in certain respects, and particularly in respect to the obligation of said associates to cause said

proposed corporation to make or procure to be made a loan of $50,000 to respondents Aldrich and Towers."

Thereupon complainant demanded of said associates that they account to him, and deliver to him certificates for his one-fifth share of the shares of respondent corporation's capital stock, received by them in and about the performance of the agreement of November 26, 1912, which they refused and still refuse to do (as charged on information and belief). Said associates received $1,000,000 par value of said shares of capital stock.

On or about January 20, 1913, complainant offered to pay and deliver to respondents, his said associates, "any proportionate share that might be proper, in cash or other consideration, required in said performance by them of said agreement dated November 26, 1912, as finally modified and performed by them, and then again requested of them a delivery to him of his one-fifth share of the profits realized by them in said transactions; but they all refused, and still refuse, to recognize any rights of complainant in the premises, and refused and still refuse to receive any payment from him in that behalf."

The chancellor in his decree sustained the demurrers to the bill, both general and special. His views are expressed in a brief opinion as follows. "It is held that complainant and respondents, other than Aldrich and Towers, were joint adventurers, under the agreement dated November 26, 1912, and that their relations under such agreement were fiduciary. Said agreement recites that it expires January 1, 1913. It is held that said fiduciary relation expired on that date, except the liability to account for acts or omissions, or both, done or suffered while it was in force. The demurrers of Aldrich and Towers are sustained upon the ninth ground

assigned. The demurrers of the other respondents are sustained upon the seventh ground assigned."

These grounds are, respectively: "(9) Said contract of November 26, 1912, is in the nature of an option agreement under which many acts were to be performed by the purchasers on or before a certain date, and there is a failure to allege the performance of these acts."

"(7) It is not sufficiently shown wherein or in what manner or to what extent complainant is entitled, under the allegations of said bill, to stock and bonds of the respondent company, Self-Fluxing Ore & Iron Company, or to profits arising or to accrue from transactions with respondents."

(6) It seems clear to us that the status of joint adventurers, upon which rests the equity of the bill, was created by the alleged agreement of October 26, 1912, and that the contract made with Aldrich and Towers on November 26, 1912, was but a step in the accomplishment of the joint adventure. In this view of the case, the expiry of the Aldrich and Towers contract by express limitation on January 1 or 2, 1913, would not of itself terminate the agreement of joint adventure made between complainant and his associates on October 26, 1912. That agreement was not limited as to its duration. It was therefore not terminable at the pleasure of any of the parties, so long as its purpose remained unaccomplished, and had not become impracticable.—*Berry v. Colborn, supra.* 17 Ann. Cas. 1022, note; *Jones v. Kinney, supra,* Ann. Cas. 1912C, 202, note; 23 Cyc. 454, E.

(7) It could, of course, have been terminated by mutual agreement. And, if one of the parties had refused to substantially perform his obligations in the premises, his associates could undoubtedly have either terminated their relations with him, and themselves car-

ried on the enterprise to his complete exclusion, with
an action against him for damages for his breach (*Yea-
ger's Appeal,* 100 Pa. 88; *McCreery v. Green,* 38 Mich.
173; *Davidor v. Bradford,* 129 Wis. 524, 109 N. W.
576; *McIntire v. Carr,* 164 Mich. 37, 128 N. W. 1079);
or they could hold such defaulter to the obligations
of his contract, and sue him for money or property
agreed to be contributed to the common fund, or to
be supplied for a specified purpose (*Pillsbury v. Pills-
bury,* 20 N. H. 90; *Finlay v. Stewart,* 56 Pa. 183; *Arm-
strong v. Henderson,* 99 Va. 234, 37 S. E. 839).

(8) But, manifestly, they could not do both of these
things. And, both upon reason and authority, if for
any valid reason they chose to terminate the relation-
ship, they could do so only by giving notice to their
associate that the relationship was then and there to
be ended.—*Edwards v. Johnson,* 90 S. C. 90, 72 S. E.
638; *Marston v. Gould,* 69 N. Y. 220, 224; *Annond v.
Tupper,* 21 Nova Scotia, 11, 16 Can. Sup. Ct. 718.

(9) It is, we think, a sound rule of equity, if not law
also, that if one of the parties, after the accomplish-
ment of the enterprise, fails or refuses, upon reason-
able notice and demand by his associates, to contrib-
ute his due proportion to the expenses thereof, he can-
not invoke the aid of a court to secure a share of the
proceeds.—See *Lind v. Webber,* 36 Nev. 623, 134 Pac.
461, 135 Pac. 139, 141 Pac. 458, 50 L. R. A. (N. S.)
1046. But the mere fact that some of the parties paid
all the expenses, or furnished all the money used, does
not exclude nonparticipating associates from a share
of the proceeds.—*Botsford v. Van Riper,* 33 Nev. 191,
110 Pac. 705; *Lind v. Webber,* 36 Nev. 623, 134 Pac.
461, 135 Pac. 139, 141 Pac. 458, 50 L. R. A. (N. S.)
1046.

In *Botsford v. Van Riper, supra,* it was said: "The evidence discloses, and the findings of the lower court are to the effect, that the respondents performed their part of the contract entered into, and stood ready at all times to further aid, as far as lay in their power, pursuant to their agreement, the consummation of the deal originally agreed upon. That they were not called upon to do so by appellant is not a sufficient reason in law or equity to invalidate their right to share in the profits of the deal, because the appellant saw fit to take the reins and do most or all of the work himself after the original agreement was made and entered into."

(10) It does not appear from the bill of complaint that the joint adventure shown has ever been legally terminated, and it will be presumed as a matter of law, that it has not, in the absence of allegation and proof to the contrary by way of defense to the bill.

(11) The fact that complainant was voluntarily associated in the joint enterprise is sufficient evidence that he desired to participate therein; but, whether he so desired or not, until he abandoned it, or was legally excluded therefrom, he was entitled to share in its proceeds. And, even if the allegation that his associates finally completed their common undertaking "without any participation therein by him" is fairly susceptible of the construction that complainant refused then to participate therein—which is at least doubtful—if thereafter, before he was notified by them of a termination of their relations with him, he repented of his default, and offered whatever contributions was due from him as a coadventurer, his status and rights therein were thereby effectually preserved.

(12) We think the joint adventure agreement of October 26, 1912, is sufficiently definite as to the character, condition, and terms of the undertaking. It is true

that the amount of the pecuniary contribution to be paid by each of the parties is not stipulated in terms. But in such a case the law will presume that all expenses are to be shared equally, just as it would also presume, in the absence of expression, that the proceeds or profits were to be divided equally. In that aspect of the bill which we have above discussed, we are of the opinion that it is free from demurrable defects.

(13) A very careful analysis of the Aldrich and Towers agreement of November 26, 1912, convinces us that it was intended to be, and in fact was, a mutual contract of purchase and sale between them, on the one hand, and complainant and his associates, on the other. Indeed, the preamble to the contract, which is a part of it, is conclusive of the question. It recites that by this agreement "said Aldrich and associates are to sell, and said Shannon and McDonough and associates are to buy, a certain tract of land," etc., and there is nothing in the rest of the contract to rebut the obvious meaning and effect of this declaration.

(14) Conceding the contention of respondents that this contract exacted of the associated grantees the performance of several stipulated obligations as a condition precedent to the acquirement of the title from the vendors by a deed of grant, nevertheless the contract vested in the purchasers an inchoate equity which would become a vested equitable estate upon a seasonable tender of performance by them, if afterwards kept good.

(15) The bill does not allege such a tender of performance. It does allege, however, that on or about December 20th, 1912, while the contract was still in force, the vendors notified complainant and his associates (the vendees) that they declined to perform their agreement according to its terms.

Under all the authorities, this repudiation of the contract by the vendors relieved the vendees of the duty of actually and formally tendering performance of their obligations in the premises, though they were conditions precedent to, or concurrent with, performance by the vendors.—*Root v. Johnson,* 99 Ala. 90, 10 South. 293; *Campbell v. Lombardo,* 153 Ala. 489, 44 South. 862; 39 Cyc. 1562, C.

(16) But, in order to prevent the extinction of the inchoate equity of the vendees in the present case by the expiration of the period allowed them for performance, it is necessary for them to allege and prove, not only the refusal of the vendors to perform, but that they were themselves able, ready, and willing to perform during that period of time.—*Moss v. King,* 186 Ala. 475, 65 South. 180, and cases therein cited. In the absence of such an allegation in the bill, it does not show that the vendees had, after January 2, 1913, even an inchoate equitable interest in the lands. This conclusion invalidates a minor theory and agreement of complainant's that, independently of the further prosecution of the joint adventure after December 20, 1912, complainant and his associates had and have such a joint interest in the lands under their contract of purchase as to entitled complainant to an accounting by his co-owners for its proceeds, even though the joint adventure was abandoned.

(17) In regard to the alternative prayer for relief by a specific performance of the Aldrich and Towers contract, for which purpose those vendors are brought in as additional parties respondent, a careful scrutiny of the provisions of that contract convinces us that it cannot be adequately and equitably enforced by the court by any decree of specific performance.

[Saunders v. McDonough, et al.]

In its alternative aspect, therefore, the bill is without equity, and the general demurrer of Aldrich and Towers was properly sustained. So also their special demurrer was properly sustained, on the ground that the bill does not show any equitable interest now in the vendees under their contract of purchase. If those respondents have wrongfully abandoned or breached their contract with complainant, he must seek his redress by an action for damages in a court of law.

(18) We have pointed out that in its primary aspect the bill is not subject to any of the grounds of demurrer interposed. In its alternative aspect it was subject to the general demurrer, and also to several of the grounds of special demurrer, interposed by the "associate" respondents; but these were all directed to the bill as a whole, and not limited to the aspect stated. They could not therefore be properly sustained.

It results that the decree of the chancellor sustaining the demurrers of R. N. and J. H. McDonough and W. A. Porter and J. J. Shannon to the bill of complaint was erroneous. To that extent the decree will be reversed and a decree here rendered overruling those demurrers.

It results also that the decree of the chancellor in sustaining the demurrers of W. F. Aldrich and John Towers to the bill of complaint was without error, and will be affirmed.

Reversed and rendered in part, and affirmed in part.

ANDERSON, C. J., and McCLELLAN, and SAYRE, JJ., concur.

ON REHEARING.

SOMERVILLE, J.—(19) The appellants, complainant's coadventurers, insist with much earnestness that

[Saunders v. McDonough, et al.]

the same rules as to pleading and proof must be applied to transactions and obligations between coadventurers as are applied to ordinary contractual obligations; that is to say, that, in order for complainant to show a right to share in the proceeds of the joint enterprise, he must allege and prove either that he has performed his full share of all the acts and services incident to the accomplishment of the enterprise, in accordance with the common agreement, or else that he stood at all times able, ready, and willing to do so. That rule, however, is applicable only to suits between parties to ordinary contracts, where the complainant's obligations were precedent to or concurrent with those of the defendant. It cannot be justly applied, and we believe it has never been applied, to obligations arising out of partnerships or quasi partnerships, which are founded upon trust and confidence, and which, without some express stipulation, are not presumed to exact, as conditions precedent to the continuance of the relation and the enjoyment of its fruits, the prompt and equal discharge, or readiness to discharge, by each partner or associate, of his various obligations concurrently with the occasion. For his defaults of duty a partner may be taxed with the loss he inflicts upon the business; and in grave cases the partnership may be dissolved by judicial decree; but it is not dissolved ipso facto.

As we have already noted, joint adventures are governed substantially by the laws of partnership; one difference to be noted here being that a dissolution for proper cause may be effected by his coadventurers against a defaulting associate without judicial decree.

It was in view of these considerations that we held that complainant makes out a prima facie case for re-

lief against these respondents by showing that he was a party to the adventure, and that, upon being informed of its accomplishment, and while the relation continued undissolved—as it presumptively did—he offered to bear his share of its burdens. A reconsideration of that holding confirms our confidence in its soundness and justice, and its harmony with the general principles of the law.