(99 South. 645)

## HALE v. BROWN.　(6 Djv. 17.)

(Supreme Court of Alabama. Feb. 7, 1924. Rehearing Denied April 17, 1924.)

**1. Brokers ☞74—Real estate broker held entitled to recover, if at all, as subbroker of defendant broker.**

Plaintiff, a real estate broker, suing another broker, with whom he had been engaged in business, for the commission earned in securing a purchaser of property listed with defendant individually, *held* entitled to recover, if at all, as an agent or subbroker of defendant; there being no privity between him and the vendor.

**2. Brokers ☞74—Subbroker's right to commission not always precluded by principal broker's nonreceipt of same.**

The principle that a subbroker is not entitled to commissions earned until the actual receipt of same by the first broker is without application, where the first broker has voluntarily disabled himself from recovering the commissions from his principal or declines to collect same.

**3. Joint adventures ☞1—Realty broker's agreement for division of commissions held not to constitute "joint adventure."**

An agreement between three realty brokers engaged in promoting an exchange of properties for a division of commissions *held* not to constitute the endeavor a joint enterprise.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Joint Adventure.]

**4. Brokers ☞74—Subagent's right to commission not dependent on principal agent's recovery from vendors.**

Where the relation of first broker and agent or subagent exists between two realty brokers, the subagent's right to a commission for procuring a purchaser of realty is not dependent on the first broker's recovery from the vendors.

**5. Evidence ☞171—Parol evidence as to identity and agreed valuation of properties exchanged held not erroneously admitted in broker's action against another broker for commission.**

In an action by a realty broker against another broker for a commission earned in effecting an exchange of property listed with defendant only, it was not error to permit plaintiff to identify the respective properties or to permit parol evidence of the agreed valuation placed upon such property, particularly where the contract for the exchange was offered in evidence.

──────────────────────

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

6. Trial ⬦⟿142—Affirmative charge should not be given when evidence affords reasonable inference adverse to recovery by party requesting.

The affirmative charge should not be given on any phase of disputed or material fact, when there is evidence reasonably affording an inference adverse to the right of recovery by the party asking the charge, or from which the jury might draw such adverse inference.

7. Trial ⬦⟿178—Evidence against party requesting affirmative charge must be accepted as true.

In passing on the right to an affirmative charge, evidence against the party requesting same must be accepted as true.

8. Brokers ⬦⟿88(11)—Instruction permitting recovery of commission by subagent, though contract did not go through, held improperly given.

In an action by a realty broker for a commission earned in effecting an exchange of properties listed with defendant, another broker, an instruction that, "if there is principal agent and subagent, then plaintiff would be entitled to recover if he produced the purchaser who was ready, willing, and able to buy, and, if he did so. then he would be entitled to recover according to the terms of their contract," held erroneous as warranting a recovery whether the trade went through or not, contrary to the evidence as to the contract between the parties.

On Rehearing.

9. Trial ⬦⟿296(9)—Error in charge erroneously given held not cured by instructions otherwise stating the law.

The erroneous giving of an instruction, which amounted to a peremptory charge for plaintiff, held not cured, though portions of the oral charge or of other written charges otherwise stated the law.

Appeal from Circuit Court, Jefferson County; Dan A. Greene, Judge.

Action on the common counts by C. H. Brown against J. Winston Hale to recover real estate broker's commissions. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

A written instrument is the best evidence of its contents. 6 Michie's Ala. Dig. (Evi.) § 119; L. & N. v. Flemming, 194 Ala. 51, 69 South. 125. Where real estate brokers work jointly by agreement to negotiate a trade between two owners and to pool the commissions received, such an undertaking is a joint adventure, and one broker can recover no part of the commissions from the other unless and until such commissions are actually received as the fruits of the adventure. 23 Cyc. (Joint Adventure) 453; 9 C. J. 585; White v. Robinson, 153 App. Div.

776, 138 N. Y. Supp. 992; Gorham v. Heiman, 90 Cal. 346, 27 Pac. 289; 15 R. C. L. 502. If the principals know of such agreement on the part of the brokers, each broker has the right to sue the principals for his share; but, if the principals have no knowledge of the fact, then the contract is invalid as against public policy, and one broker cannot recover from another. Pryor v. Scott (Tex. Civ. App.) 200 S. W. 909; 4 R. C. L. 327; 9 C. J. 571; Williams v. Knight Realty Co. (Tex. Civ. App.) 217 S. W. 735. Where one broker works under another's license, and the agreement is that he shall receive one-half of the commissions on all sales he makes, or trades that go through, the commission is not due if a proposed sale or trade is not consummated and does not go through, as a sale represents a completed transfer. White v. Robinson, 153 App. Div. 776, 138 N. Y. Supp. 992; 9 C. J. 585. Where there is any conflict in the evidence, or a contract is susceptible of more than one interpretation, or the evidence justifies different inferences as to the effect of the contract, the court has no right to charge the jury on the effect of such contract. The fact that the trial court may have in other parts of the charge given the law contrary, or that the written charges may have stated the law otherwise, does not relieve error, where the instruction is not withdrawn, but allowed to remain with the jury. Vocalis v. State, 17 Ala. App. 521, 86 South. 92; B. R., L. & P. Co. v. Seaborn, 168 Ala. 658, 53 South. 241; Smith v. State, 15 Ala. App. 662, 74 South. 755.

D. G. Ewing and Cabaniss, Johnston, Cocke & Cabaniss, all of Birmingham, for appellee.

Plaintiff, as subagent, stood in no relation of privity to the principals, and his only remedy was against the first agent. 9 C. J. 583. The subagent's rights cannot be defeated by the first agent's disenabling himself to recover from the principal. 4 R. C. L. 333; 1 Mechem on Agency (2d Ed.) 1145; Id. 247; Reasoner v. Yates, 90 Neb. 757, 134 N. W. 651. Where it is agreed that the agent will pay commission to a subagent for procuring a purchaser, and one is obtained, the agent is liable for the commissions. Barthell v. Peter, 88 Wis. 316, 60 N. W. 429, 43 Am. St. Rep. 906; Bauer v. Crow (Tex. Civ. App.) 171 S. W. 297; Saunders v. Yoakum, 12 Cal. App. 543, 107 Pac. 1007; Piper v. Allen (Mo. App.) 219 S. W. 98. Under rule 45, the giving of the excepted-to portion of the oral charge was error without injury. Richmond R. R. Co. v. Weems, 97 Ala. 270, 12 South. 186; Richmond R. R. Co. v. Farmer, 97 Ala. 141, 12 South. 86; Sweeny v. Bienville Water Sup. Co., 121 Ala. 454, 25 South. 575. The best evidence rule has no application to mere collateral matters. 10 R. C. L. 904.

THOMAS, J. The plaintiff was C. H. Brown, and the defendant was J. Winston Hale.

The issues submitted to the jury were (a) whether the relation of subbroker and broker existed between Brown and Hale, so that the former stood in the same relation to the latter as did Hale to the Fulenwiders, and (b) whether Hale, Pitts, and Brown were joint adventurers, and in that event plaintiff (Brown) could not recover of defendant (Hale), unless the latter had actually recovered the commissions from the Fulenwiders. The jury returned a verdict for the plaintiff.

The plaintiff, as a witness, testified that he "was in the real estate business with the defendant," had handled such "transactions in conjunction with the defendant" "prior to the time that this matter in suit came up"; that their agreement was:

"When I went in the office with the defendant my agreement with him was that I was to work under his license, and he was to pay the expenses of the office, and I was to get half of the commissions on all sales I made; that is, on the ones handled by me, or the ones that I brought in, that is, if I produced a purchaser or a seller, and the trade went through, through the influence of the defendant in connection with those trades, I was to get half of the commissions."

The witness further stated of the matter in hand:

"I was not employed in any way by the Fulenwider boys in connection with this matter in suit. The property was turned over to me by Mr. Hale, the defendant, some time about the 1st of November he told me that he had some property belonging to the Fulenwider boys, and that they were very anxious to trade it; * * * that night I ran upon Mr. Pitts, and made an engagement with him to bring Mr. Maloney down the next morning to our office, and he did bring him down there. Mr. Pitts told me that Mr. Maloney was a prospective trader, and Mr. Pitts was also in the real estate business. So far as I knew Mr. Hale did not at that time know Mr. Pitts, or have any relation with him at all. I made this engagement with Mr. Pitts for the next morning, and he brought Mr. Maloney down to our office, and we showed him the property that day, and he made a proposition on it. * * * The Fulenwider boys made Mr. Maloney a proposition, which he accepted. During that time I performed whatever work was necessary, or that happened to come up about making this trade and working it up. I had interviews with the parties, and with Mr. Maloney and Mr. Pitts, and Mr. Hale, the defendant, handled the Fulenwider boys. Mr. Maloney had no connection with Mr. Hale, the defendant, in connection with this property at all before this matter came up. Mr. Maloney was brought into the transaction by Mr. Pitts and myself, or rather through me. A written contract for this transaction to be carried out was finally signed."

The witness further testified that—

"Hale and all of us had an agreement as to how our compensation was to be divided for putting this trade through; we were to get a commission from the Fulenwiders, and we had an agreement with Mr. Maloney—Mr. Pitts did —and then we were to divide the commissions. That was the final agreement we had. * * * When we did have our agreement Mr. Hale was supposed to inform the Fulenwider boys of that, and Mr. Hale told me that the Fulenwider boys had been informed about our agreement as to our commission for putting the trade through. * * * In this case the commission was to be 1¼ per cent., and that commission was fixed by the Fulenwider boys. The Fulenwider boys took the matter of commission up with Mr. Hale, and told him what they would pay, and he asked me if it would be all right to accept that, and I told him it would. I did not have any direct communication with the Fulenwider boys as to what the commission was to be. * * * It was after that when the final typewritten contract was prepared * * * (and) was signed by both Mr. Maloney and the Fulenwider boys."

The witness fixed the amount of his share of the commissions at $3,900, and further stated that he asked Hale for his part of the commission, or "what action he intended to take about suing the Fulenwiders for this commission, and he said that at the present time he couldn't sue them, because it would hurt his business connection with them, but that, if he ever had any difficulty with them, he would be glad to go ahead and see what he could do." The witness admitted on cross-examination that he—

"did not take out any license as a real estate agent when I went with Mr. Hale, because he told me that I would work under his license, and I worked in his office, and he paid the advertising expenses, and furnished me with office space, and the commissions on stuff I sold or got myself were divided between us. If I handled any property that Mr. Hale had listed, and made the sale, I would get half of the commission; it was a simple arrangement. When this trade first came up I saw Mr. Pitts, who is another real estate agent, and he was the agent for Mr. Maloney, or representing Mr. Pitts. I knew Mr. Pitts, and Mr. Hale told me that he had this Fulenwider property for trading. I then got in touch with Mr. Pitts, and Mr. Pitts came to Mr. Hale's office. There was no agreement on the part of the Fulenwiders to pay any commission at all except this 1¼ per cent."

As to the amount of the commissions the witness stated:

"This agreement to split the commission between the three of us, and me take a third, and Mr. Pitts a third, and Mr. Hale a third, was made some time along about the beginning of the contract. When we found out how much it would be, me and Mr. Pitts and Mr. Hale agreed to add it together and divide it, and the part Fulenwider would have paid would have been about $4,500 and Maloney $12,000, making $16,000, and I was to get a third, that, Pitts a third, and Hale a third. The Fulenwider boys knew that we were to split the commissions; * * * Mr. Maloney knew about it, as it was discussed with them. The commission to be

paid by Mr. Maloney was in the neighborhood of $12,000."

The witness also testified that the sale did not "go through," and there "has been no consummation of the sale yet."

The defendant Hale, as a witness, testified:

"I tried to negotiate a sale or trade between H. N. Maloney and the two Fulenwider boys. Mr. Brown, the plaintiff, came to me in about July, 1921, and asked about making a connection to sell real estate on a commission basis, and I told him it was all right with me, and that I would be glad to have him, and our arrangement was that, if he worked up a sale of any property that I had a listing of, each one was to get half of the commission received from the sale, and, if he listed any property, and I worked up a trade on anything that he had listed, the commission was to be split fifty-fifty, and that is the extent of the original trade, and I was to pay all overhead expenses, and he was to work under my license. Now, getting down to this Maloney trade, Mr. Pitts came to my office some time in November looking for Mr. Brown; I had never seen Mr. Pitts before, and did not know who he was; * * * and my recollection is that Mr. Pitts came back the second time, and called for Mr. Brown again, and Mr. Brown was out, and he stated to me that he had been talking with Mr. Brown the previous night, and they had discussed making a deal on the Fulenwider home at Roebuck Springs—trading for some property that his client owned—and wanted to know if I could go with him and his client to see this home, and I told him I would, and then he brought Mr. Maloney up to my office, and so I took them out to Roebuck and showed them the Fulenwider property and some property on Eleventh avenue, and then either Mr. Pitts or Mr. Maloney brought up the question as to why couldn't we work up a trade on Mr. Maloney's Highland View Apartment, and that was the beginning of the trade, and, after a great deal of negotiations, I got them together on a trading basis, and drew the contract, and had them sign it. A good deal of the Fulenwider property was in the nature of an estate, of which there were three trustees, and this contract was signed by two of the trustees. The arrangements as to the commissions to be paid was that any commission we·got we would split three ways, and when my client said they would only pay 1¼ per cent. on the value of the property they were trading in, I submitted that to Mr. Pitts and Mr. Brown to see if that was satisfactory to them, and they said it was. We were going to add the two commissions together and split it three ways, and I had to get Mr. Pitts and Mr. Brown to consent to that 1¼ per cent. commission from the Fulenwiders, and they did agree to that; agreed that the commission was to be split three ways."

Witness further stated that he had "not filed any suit against the Fulenwiders for my commission in connection with this matter. I still continue to represent them in handling their rental property"; and that he had never "agreed in any way, shape, form or fashion with the Fulenwiders not to collect this commission if this contract is declared to be valid, nor have I made any agreement of any kind or description with them that relieves them of the responsibility in this matter, if the court holds that this contract is valid"; and that he had made no demand on the Fulenwiders, etc.

[1, 2] It is evident that, if plaintiff is to recover, it is as subagent of Hale, as he stands in no relation of privity with the Fulenwiders. Only Hale could recover, if at all, from his principals, the Fulenwiders, the whole commission. And, in that event, the remedy of Brown, as the broker or subagent employed by Hale to assist him in the sale, is against the first broker (Hale), who is his employer. 9 C. J. 583, § 82. If, under certain circumstances, the subagent's right to commissions should depend upon the actual receipt of the commissions by the first broker, this principle cannot be given application, if said broker has voluntarily disabled himself from recovering the commissions from the principal, or if he voluntarily declines to collect or recover the same for the joint benefit of himself and the subagent. In such case the subagent is not subjected to the caprice· or negligence of the first broker, but has his right of recovery against the latter. In 4 R. C. L. pp. 333, 334, § 68, it is said:

"Although there is no promise on the part of the employer to compensate his broker, the former impliedly agrees that he will perform the main contract which the broker is engaged to negotiate, and will thus afford him an opportunity of securing payment from the other side. When the employer violates his agreement in this respect, and the broker sues for his commissions or their equivalent, he is permitted to recover, not upon the theory that the contract holds the employer to their payment, but because the employer by violating the contract of employment has destroyed its obligatory force and deprived the broker of the fruits of performance on his part, for which reason the latter is entitled to such a recovery in damages as will restore what he has unlawfully been deprived of through the nonperformance of his principal. * * * The liability of· a broker to a subbroker under such circumstances is governed by the same general principles that govern that of his employer to him."

See, also, 1 Mechem on Agency (2d Ed.) p. 1145.

The subagent is the agent of the broker only, and must look to him for his compensation, as there is no privity between the subagent and the principal. 1 Mechem on Agency (2d Ed.) p. 247, § 333; Reasoner v. Yates, 90 Neb. 757, 134 N. W. 651, and authorities. See, also, 1 Mechem on Agency (2d Ed.) p. 1145, § 1536.

In S. F. & M. Ins. Co. v. De Jarnett, 111 Ala. 248, 19 South. 995, it was declared:

"A principal is not bound by the acts or statements of the clerk of his agent, employed by

the agent for his own convenience, without authority of the principal of the agent, express or implied, and without his knowledge of such acts or statements or employment; and evidence of the employment of such clerk, and of the scope of his authority from his employer, is not competent against the original principal." National Park Bank v. L. & N. R. Co., 199 Ala. 192, 205, 74 South. 69.

[3, 4] The agreement between Brown, Pitts, and Hale to divide commissions did not make of it a joint adventure as far as concerned Hale and Brown. Christie v. Durden, 205 Ala. 571, 88 South. 667; Saunders v. McDonough, 191 Ala. 119, 67 South. 591. There was a tendency of the evidence that previous relations created the relation of first broker and agent or subagent. If such be the case, Brown's right of recovery against Hale did not depend upon the latter's recovery from the Fulenwiders. L. R. A. 1918F, 720. It was not within the actual or apparent scope of Hale's authority to bind the Fulenwiders to the payment of Brown's commissions, as the Fulenwiders treated exclusively with Hale, and not with Brown.

[5] There was no error in allowing the witness Brown to identify the respective properties to be sold. This was not proving by parol the written contract, and the rule of L. & N. R. Co. v. Fleming, 194 Ala. 51, 61, 69 South. 125, is without application. So the valuation agreed upon as to the Fulenwider property may be stated by the witness as a collateral fact in this suit. This may be shown by parol evidence. Moreover, the contract was offered in evidence.

[6, 7] The affirmative charge should not be given on any phase of disputed and material fact. When there is evidence reasonably affording an inference adverse to the right of recovery by the party asking the charge, or from which the jury might draw such adverse inference, such charge should not be given on request; and, in determining the propriety of affirmative instruction, the evidence against the party by whom such instruction is requested must be accepted as true. McMillan v. Aiken, 205 Ala. 35, 40, 88 South. 135.

[8] In part of the oral charge, to which due exception was taken, the jury were instructed on the phase of the case as to the relation of principal agent and subagent as follows:

"If there is principal agent and subagent, then the plaintiff would be entitled to recover if he produced the purchaser who was ready, willing, and able to buy, and, if he did so, then he would be entitled to recover according to the terms of their contract."

In this peremptory instruction there was error. The evidence on the instant point was susceptible of an adverse inference to plaintiff that might have been drawn by the jury.

An excerpt from plaintiff's evidence illustrates this error. He said, on his direct examination:

"When I went in the office with the defendant, my agreement with him was that I was to work under his license, and he was to pay the expenses of the office, and I was to get half of the commissions on all sales I made, that is, on the ones handled by me, or the ones that I brought in, that is, if I produced a purchaser or a seller, and the trade went through, through the influence of the defendant in connection with those trades, I was to get half of the commissions."

And on cross-examination the witness reiterated that "he [Hale] paid the advertising expenses and furnished me with office space, and the commissions on stuff I sold or got myself were divided between us." This phase of the tendency of conflicting evidence is emphasized by the statement of the defendant that the arrangement between him and Brown was that, if the latter worked up a sale of property listed by Hale, each was to get one-half of the commissions received from the sale; and, if Brown listed property with Hale, and the latter made sale thereof, they were to divide the commissions. The language of the witness is:

"* * * And our arrangement was that, if he worked up a sale of any property that I had a listing of, each one was to get half of the commission received from the sale, and, if he listed any property, and I worked up a trade on anything that he had listed, the commission was to be split fifty-fifty, and that is the extent of the original trade, and I was to pay all overhead expenses, and he was to work under my license."

Therefore a reasonable inference might have been drawn from the foregoing evidence contrary to the instruction of the court to which exception was reserved—that is to say, if there were contradictory statements or inferences that might be drawn from the evidence, the same might be disregarded by the court, but the question of credibility was for the jury. Jones v. Bell, 201 Ala. 336, 77 South. 998.

We do not by this mean to say that there was no phase of the evidence that would authorize the jury to find that under the contract between Hale and Brown the latter was entitled to recover, whether the trade "went through" or not; but we are merely indicating that the inference of fact was for the jury, and, if the jury saw fit to draw the contrary inference, this might be done. The court was in error in instructing the jury, as matter of law, that under the contract between Hale and Brown the latter earned his commissions whether the "trade went through" or not, so long as he [Brown] "produced a purchaser who was ready, able, and willing to buy" the property made the subject of the proposed sale.

The case should be retried; and the other assignments of error need not be considered.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.

## On Rehearing.

THOMAS, J. [9] The plain import of that part of the general charge to which exception was reserved, and held to have been error to give, is that it was a peremptory instruction. Though other portions of the oral charge, or of written charges, may have otherwise stated the law, in the absence of the withdrawal of such peremptory instruction the error in giving the latter would not have been eradicated, for the reason that the jury would not know which of the two instructions "to heed or follow." Hines, Dir. Gen., v. Schrimscher, 205 Ala. 550, 88 South. 661; Talley v. Whitlock, 199 Ala. 28, 36, 73 South. 976; Clinton Mining Co. v. Bradford, 192 Ala. 576, 69 South. 4; McCaa v. Thomas, 207 Ala. 211, 92 South. 414; Crow v. Beck, 208 Ala. 444, 94 South. 580; B. R., L. & P. Co. v. Seaborn, 168 Ala. 658, 663, 53 South. 241; Vacalis v. State, 204 Ala. 345, 86 South. 92.

The application for rehearing is denied.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.