FINNEY et al. v. LONG.    (6 Div. 869.)

Supreme Court of Alabama.    April 14, 1927.

Rehearing Granted Oct. 20, 1927.

1. Brokers ⬡⟾88(1)—Whether plaintiff was acting independently of company with which he was working in making sale of property for defendant held for jury.

In suit for real estate commission, question whether plaintiff was acting independently of company with which he was working in making sale of defendant's property *held* for jury.

2. Appeal and error ⬡⟾1046(5)—Court's remark, while witness was being questioned, that he would have to instruct jury regarding bias of witnesses, held not prejudicial.

Court's remark, while witness was being questioned, that he would have to instruct jury that in considering testimony of any witness they could take into consideration any interest or bias witness may have shown, to induce witness to answer question, *held* not prejudicial error.

3. Brokers ⬡⟾88(12)—Instruction that, if agency was charging commission to both parties "without informing" them of double representation, plaintiff could not recover, held properly refused.

In suit to recover real estate commission, instruction that, if agency was charging commission to both parties "without informing" them of double representation, plaintiff could not recover, *held* properly refused, since it was unnecessary to inform parties if they had knowledge of and consented to double representation and charges of commissions.

4. Brokers ⬡⟾65(4) — Broker may represent both parties if both parties know and consent to such situation.

There is no legal objection to double employment of broker if both principals know or are informed of such situation and consent thereto.

On Rehearing.

5. Brokers ⬡⟾65(4) — Refusal of instruction that, if real estate broker represents both parties without their consent, he forfeits right to compensation from either, held error.

In suit to recover real estate commission, refusal of instruction that real estate broker, who negotiates sale or exchange of property in usual line of his business, cannot represent both parties to transaction without their mutual consent, and, if he does so, he forfeits all right to compensation from either, *held* error.

Appeal from Circuit Court, Jefferson County; Roger Snyder, Judge.

Action to recover real estate commission by J. P. Long against Julia Finney and T. L. Finney. From a judgment for plaintiff, defendants appeal. Transferred from Court of Appeals under Code 1923, § 7326. Reversed and remanded on rehearing.

Erle Pettus, of Birmingham, for appellants.

---

The action of the court in making the statement in regard to the witness Smith constituted reversible error. W. U. Tel. Co. v. Northcutt, 158 Ala. 541, 48 So. 553, 132 Am. St. Rep. 38; Rogers v. Smith, 184 Ala. 506, 63 So. 530. The evidence shows that plaintiff was a mere salesman for the Watson Company, and if any cause of action existed it would have been on behalf of the Watson Company. The affirmative charge should have been given for defendants. Alford v. Creagh, 7 Ala. App. 358, 62 So. 254. Charges A and 13 correctly state the law, and should have been given. Gray v. Pankey, 211 Ala. 539, 100 So. 880; Rawls v. Carlisle & Baston, 208 Ala. 164, 93 So. 820.

Lange, Simpson & Brantley and Ormond Somerville, Jr., all of Birmingham, for appellee.

There was no error in the statement by the court to the effect that the subject of interest or bias of a witness would be dealt with in charging the jury. The authorities cited by appellants are inapt. The question of the capacity of plaintiff to sue cannot be raised by request for affirmative charge. 20 R. C. L. 37; Southern R. Co. v. Stonewall, 177 Ala. 327, 58 So. 313, Ann. Cas. 1915A, 987. If there is a scintilla of evidence unfavorable to the party requesting the affirmative charge, such charge should be refused. Cleveland L. M. Co. v. Sou. S. C. C. Co., 204 Ala 297, 85 So. 535. Nor is such charge to be given when there is conflict in the evidence on any material matter in issue. T. C. I. Co. v. Stevens, 115 Ala. 461, 22 So. 80; Edgar v. McArn, 22 Ala. 796.

THOMAS, J. The three counts on which the trial was had were common counts and on alleged contract. The latter count avers that defendants employed the plaintiff as an agent to sell designated lots and agreed to pay plaintiff the customary real estate commission of 5 per cent. of the first $5,000 sales price and 2½ per cent. of the balance; and it is further averred that as such agent the property was sold for the price of $7,000 on October 1, 1923, and that defendants breached the contract in that they failed to pay as agreed upon and recited above. The demurrer being overruled, the reply thereto was in short by consent, with leave to give in evidence any matter which if well pleaded would be admissible in defense, etc.

The subject of commissions of real estate brokers has been often considered by the court and not necessary to be repeated. As to good faith exacted, see Clay v. Cummins, 201 Ala. 34, 77 So. 328; Id., 207 Ala. 105, 91 So. 790; Berry v. Marx, 206 Ala. 619, 91 So. 583; Peters Min. Land Co. v. Hooper, 208 Ala. 324, 94 So. 606; Jackson v. Berry-Snellings R. Co., 211 Ala. 174, 100 So. 111; Meeks v. Miller, 214 Ala. 684, 108 So. 864.

And the rights of subbrokers were given extended consideration in Hale v. Brown, 211 Ala. 106, 99 So. 645; Id., 215 Ala. 177, 110 So. 376.

The relation of the parties to the sale must be determined. Distinguished counsel thus state their respective views as to this question: For the appellee, it is insisted that the bill of exceptions fails to show that plaintiff's capacity was that of "salesman only," and cites, in support of this, that plaintiff testified:

"I don't know whether you would consider that I was a partner of the Watson Investment Company. I went in with Mr. Watson." That he and Mr. Finney "talked about this transaction dozens of times. The first time was right in the office. He came in the office and gave me the property. He told me to go ahead and sell the property and he would pay a commission."

The plaintiff, as a witness, defines his position and the facts to have been as follows:

"I asked Mr. Finney how they traded, what he got for the place, and he said, in the way he got it, about $7,000. Mr. Finney said: 'Mr. Long, I will take care of your commission; don't bother about that.' It went along for a week or two. I went to Mr. Finney and asked him about it, and he said he wanted to see Erle Pettus; that Mr. Watson was in on that and he wanted half of it, and he put me over to a certain day the next week. The next week I came up to see Mr. Finney about the matter, and he said, 'I have not decided, but you will get your pay.' * * * The next time I went he said if we would get Mr. Watson out of it he would pay it. I told him to call up Watson, and he called up Watson, and Mr. Finney told me what Watson had said. He said Watson said he had no interest in it. * * *

"It is a fact that the Watson Investment Company was the real estate agency and I was there working merely as a salesman for the Watson Investment Company. I don't know whether you would consider that I was a partner in the Watson Investment Company. I went in with Mr. Watson. I gave Mr. Watson 40 per cent. of all of the sales I made. I did business in the name of the Watson Investment Company, and the listings I took and the sales I made were in the name of the Watson Investment Company. Mr. Watson was the Watson Investment Company. That is the same Mr. Watson that is here as a witness. His name is J. C. C. Watson, and the business was conducted in his name, and the license was paid in his name. I didn't take out any license in my name.

"The listing of this particular property was just a verbal listing. I never talked to Mrs. Julia Finney in my life about it. As a matter of fact, the title to this property was in her name, and she was the owner of the property and made the deed, so far as I know. * * * He came in the office and gave me the property. He told me to go ahead and sell the property and he would pay a commission. At first he gave me a price of $10,000 on it. I didn't sell it for $10,000. He told me he would take $8,000 or trade it for other property. In the trade I don't know what Mr. Finney got for the prop-

erty. As a matter of fact, the property went into a trade for other property. I never had any writing at all from Mr. Finney or Mrs. Finney. * * *

"Mr. Watson had Mr. Smith's property for sale. Mr. Watson helped make the trade. Watson had Smith's property listed and had an agreement to get a commission out of Smith. I was working for Watson, and me and Mr. Watson went into an agreement that he was to get his commission out of Smith and I was to get mine from Finney. Mr. Finney was right there in the office when Mr. Watson and I made that agreement, but I don't know whether he was paying any attention to it or not. Mrs. Finney was not there. I never had any conversation with Mrs. Julia Finney about this matter. Mr. Finney listed this property with me and said he didn't want Watson to' have anything out of it, but he would pay me the commission. He told me this the day I showed the property. Mr. Finney was there when Mr. Smith came in, and I don't know where Mr. Finney and Mr. Smith went after I left. The property was sold the next day after that. * * *

"I was working as a salesman for the Watson Investment Company at that time. Mr. Watson never told me that he was going to charge the commission to Smith. He told me he was going to pay his part of his commission; that he would take Smith's part and Finney would pay me. The whole matter was handled through Watson Investment Company as agent. The whole transaction, both for Mr. Smith and Mr. Finney, was handled through the Watson Investment Company. Watson Investment Company was the only agent in it. The contract I had with the Watson Investment Company · was that when a sale was made through the Watson Investment Company I was to get 60 per cent. and the Watson Investment Company 40 per cent. of the commission."

The testimony of Mr. Watson was to the effect:

That he "was running the Watson Investment Company. That was a real estate company. Mr. Long was employed by me as a sales agent, and was not employed by me in any other capacity. He was employed by me in connection with the business of the Watson Investment Company, and I was the Watson Investment Company. * * * Mr. Smith had property listed with me for sale or trade. Mr. Finney listed some property at Central Park with me for sale. Mr. Long was working for me, and the property was listed in my office." That it was his "understanding that this property was listed with me by Mr. Finney on a net basis. That was the agreement between us, and the property was sold through my office on that basis. The property was traded at a net price. Any commissions that were to be earned were above that net price, according to the agreement."

The witness testified further as follows:

"Mr. Smith came in my office and listed his property, 160 acres of land, for sale or trade. It is my recollection that under this ‚agreement I had with Mr. Finney on this trade that was made, I was not to charge Mr. Finney any commission at all on the trade. Mr. Long was to get 60 per cent. of all trades he made for the Watson Investment Company, and I was to get the balance. * * *

"That was Mr. H. E. Smith that talked with me. That is the man who listed his property with me. When I listed his property I was going to charge him a commission on the sale of it. Mr. Finney listed some property with the Watson Investment Company. I did not charge Mr. Finney any commission on his property. I was and I was not going to work for Mr. Finney for nothing. I can explain the transaction if you want me to. Mr. Finney said, 'You trade this way and I will give you my farm to sell it over.' When Mr. Finney came in there and listed his Central Park property the farm was discussed. Indirectly Mr. Finney listed the Central Park property with me to trade for a farm. When Mr. Finney listed the Willis street property with me, he told me to trade it for a farm and said he would take my judgment on the value of the farm. He listed the property with me to either trade or to make an ordinary sale for cash. I don't remember who was present at the time he listed the property with me. I don't remember who heard me tell him I would not charge him any commission. Mr. Smith listed his property with me. Mr. Long would have gotten 60 per cent. of the commission from Mr. Smith if we had gotten anything. We have not gotten anything out of the deal yet. * * *

"Q. Mr. Long never has gotten a cent either from Mr. Smith or Finney? * * * A. I did not get anything; I don't know whether Mr. Long did or not. * * *

"Under the agreement I had with Mr. Long, in the event I collected the commissions from Mr. H. E. Smith, Mr. Long was to get 60 per cent. of that commission when it was paid in. I am suing Mr. Smith for that commission now. I have got a suit by the Watson Investment Company against Mr. Smith for the amount of the commission which I say he owes me on this claim. The agreement was that if I collected the commission from Mr. Smith, Mr. Long was to get 60 per cent. of that commission. The agreement between Mr. Finney and I was that Mr. Finney was not to pay anything for the handling of his property in this Smith-Finney transaction."

[1] Thus a jury question was presented by reason of adverse inferences in the evidence as to the relation of the parties, the agency of the husband for the wife, the agencies of the respective vendors, and whether Watson and Long were partners or joint adventurers as to the sale and commissions to be realized from the sale of Finney's property. This is to say, under the scintilla of evidence (C. L. M. Co. v. S. S. C. C. Co., 204 Ala. 297, 85 So. 535), the rule as against him who requests the affirmative charge, on the material question of fact as to whether the plaintiff was, or not, acting independently of Watson, or his company, in making the Finney sale. The effect of the general charge by the defendants was to instruct affirmatively as to the plaintiff's capacity or interest to maintain the suit. Hale v. Brown, 211 Ala. 106, 99 So. 645; Id., 215 Ala. 177, 110 So. 376; McMillan v. Aiken,

205 Ala. 35, 40, 88 So. 135; Shipp v. Shelton, 193 Ala. 658, 69 So. 102.

[2] When H. E. Smith was a witness, he was instructed to speak louder, and to the further request by counsel that witness be required to answer the question propounded, the court said in the presence of the jury:

"I will say this—possibly it may have some bearing: I will tell the jury when I charge them on the law that they will consider any interest or bias a witness may show by his testimony while on the witness stand. Now, answer his question the best you can."

To this exception was reserved by defendants. Thereupon the jury were excused, and defendants moved for a mistrial and continuance on the ground that said remark by the court was prejudicial. Counsel said:

" 'You turned to the jury, after Mr. Smith's answer had been read, and your honor stated you expected to charge the jury they had a right to take into consideration the bias or any interest.

" 'The Court: I didn't say exactly that; I said I would have to instruct the jury in considering the testimony of any witness they could take into consideration any interest or bias the witness may have shown.

" 'Mr. Pettus: We objected to that.

" 'The Court: If he will second that motion—

" 'Mr. Simpson: No, sir.

" 'Mr. Pettus: I want to ask your honor to enter a mistrial on that ground at this time, and we except to your honor's overruling that motion.

" 'The Court: Yes, sir; I will have to overrule it.

" 'Mr. Pettus: We will reserve an exception.

" 'The Court: I never saw a witness like that before, exactly.

" 'Mr. Pettus: That is the reason we think your honor's statement was error and injurious to the rights of the defendants.

" 'The Court: He seemed so prejudiced against the plaintiff.

" 'Mr. Pettus: That is the very thing; that is the very idea your honor's statement conveyed to the jury.

" 'The Court: No, sir; it was only in hopes he might have sense enough to go ahead and answer the question.' "

Error is urged on the authority of Western U. Tel. Co. v. Northcutt, 158 Ala. 539, 48 So. 553, 132 Am. St. Rep. 38; Rogers v. Smith, 184 Ala. 506, 63 So. 530. In the former the telegram received by Van Horn with letters and figures thereon was open to proof of their meaning; after the same was in evidence the court remarked in the presence of the jury, to defendant's counsel, who denied the delivery of said message, "You are responsible for it." This was prejudicial error, being an affirmative statement or expression of opinion on a material question of fact to be determined. Such is not this case. In Rogers v. Smith, supra, the court remarked during the examination of a negro witness (Wallace Stanton) for the plaintiff, and after the court had asked that witness several questions, remarked in the presence of the jury, "I wouldn't believe a [negro] any quicker than a pink-eyed rabbit"; held reversible error notwithstanding the instruction that the "jury * * * should pay no attention to his remark." This error to prejudice was of the class held ineradicable. See, as to remarks of counsel in the presence of the jury, Anderson v. State, 209 Ala. 36, 95 So. 171; Davis, Director Gen., v. Quattlebaum, 210 Ala. 242, 97 So. 701; Watts v. Espy, 211 Ala. 502, 101 So. 106; B. R. L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, Ann. Cas. 1916A, 543; Moulton v. State, 199 Ala. 411, 74 So. 454. There were improper remarks of court and counsel held ineradicable error. Such is not the effect of the court's remark to the witness who had theretofore hesitated in answer.

[3, 4] Appellants assign as error the refusal of the following charges:

13. "A real estate broker or agent who is negotiating a sale or exchange of property in the usual line of his business cannot represent both parties to the transaction without their mutual knowledge and consent. If he attempts to do so, he forfeits all rights to any compensation or commission from either."

A. "If you believe from the evidence in this case, and are reasonably satisfied from the evidence, that the Finney-Smith real estate trade was made through the Watson Investment Company, a real estate agency, and that said trade is the one sued on, and that said agency was charging a commission to both parties without informing said parties of the double representation, then in that event you cannot find a verdict for plaintiff."

Charge A was properly refused in the requirement without informing said parties. This is not necessary if the parties had knowledge of and consented to the double representation and charges of commissions. As to charge No. 13, appellee's counsel conceded that "as a legal proposition it is a correct statement of law as expressed by" this court, but it is insisted "that it was properly refused in the abstract form requested—not only the substance must be correct, but the form must be applicable to the particular facts in the case." Watson, not his company, was suing Finney. Neither claimed commissions from her—there was inference of fact that only Long represented Finney in the sense of a paid agency. It is another question as to Long's rights, as subagent or broker of Watson, to the commissions out of Smith if the same are realized by payment to the Watson Company, or as the result of pending suit by Watson against Smith. There is no legal objection to a double employment if both principals know or are informed of the situation and consent thereto. Green v. South. Lbr. Co., 163 Ala. 511, 50 So. 917; De Hart v. Johnson, 201 Ala. 497, 78 So. 851; Gray v. Pankey, 211 Ala. 539, 100 So. 880.

The other assignments of error are not sufficiently presented by argument of counsel. Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 So. 158. And the judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.

On Rehearing.

THOMAS, J. [5] The evidence has been again carefully considered, and it is the judgment of the court that defendant's refused charge 13 states a correct proposition of law, and should have been given under the tendencies of the evidence and issues of fact for decision by the jury.

The application for rehearing is granted, the judgment of affirmance set aside, and the judgment of the circuit court is reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.