## STREAT v. WOLF.

(Supreme Court, Appellate Division, First Department.   December 3, 1909.)

JOINT ADVENTURES (§ 5*)—ACTION FOR BREACH OF CONTRACT—EVIDENCE AS TO
   DAMAGES.

>    In an action for breach of a contract, whereby the parties agreed to
> procure the manufacture of a line of cotton goods in imitation of wool,
> defendant to pay for making the samples and other incidental expenses,
> not exceeding a certain sum, evidence *held* to entitle plaintiff to recover
> $91 damages as his share of the profits of a single sale of goods, an order
> for which had been placed when defendant refused to proceed further,
> but not to entitle him to recover on account of other goods which might
> have been sold.

>    [Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 7; Dec.
> Dig. § 5.*]

Appeal from Trial Term, New York County.

Action by George Streat against Alfred Wolf.   From a judgment
for plaintiff, on a verdict of six cents damages, he appeals.   Modified
and affirmed.

See, also, 132 App. Div. 872, 117 N. Y. Supp. 449.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-
LIN, McLAUGHLIN, and CLARKE, JJ.

Charles Blandy (Frederick A. Card, on the brief), for appellant.
Benjamin Tuska (Abraham Tulin, on the brief), for respondent.

LAUGHLIN, J.   The action is brought to recover damages for a
breach of a contract.   The business of the plaintiff, as described by
himself, was "getting up novelties and any new styles of goods that
are salable, and show a good profit," and dealing therein on what he
describes as "joint account," which he defines to be the furnishing of
capital by a party with whom he contracts and a division of the prof-
its.   For the purpose of engaging in such a venture, he and the de-
fendant entered into an agreement in writing on the 11th day of Jan-
uary, 1907, as follows:

"This agreement witnesseth that, in consideration of one dollar ($1.00) each
to the other in hand paid, the receipt of which is hereby acknowledged, and
other valuable considerations, we, Alfred Wolf and Geo. Streat, hereby agree
to get up a new line of cloths, made of cotton, and in close imitation of certain
all-wool foreign suitings, or cloths, on joint account, sharing the profits an-
nually.   The said Alfred Wolf agrees to pay for making sample pieces of the
goods and other expenses incidental thereto, providing the outlay on same is
not to exceed in all the sum of two hundred and fifty dollars ($250.00).   Sam-
ples and sample pieces are to be the property of the said Alfred Wolf, and are
to be transferred to the joint account at cost, as soon as we decide that they
are satisfactory enough for us to proceed with the project.   We further bind
ourselves not to offer these goods to any manufacturers to make, or cause to be
made, without the consent in writing of both parties hereto.   The method of
placing the goods on the market to be determined when the sample pieces are
produced satisfactory to both parties hereto."

After making the agreement, they took samples of the foreign goods
which they desired imitated to certain manufacturers, and the plain-
tiff described the kind of cotton goods they desired made up in imita-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion of the goods of foreign manufacture. J. P. Stevens & Co. undertook to make the samples for them, and the third effort resulted in a sample which received the approval of the parties. They then placed an order with Stevens & Co. for 3 pieces of the goods, of different colors, containing about 5 yards each, to be completed and prepared for the market. These were manufactured and delivered to the parties on the 5th day of June, 1907. Stevens & Co. then agreed to manufacture such quantities of the goods for the market as the parties desired, at a cost of "18½ cents per yard, net, 10 days from the 1st of October, less 2 per cent.," and stated that they could deliver 200 pieces each week, and commence delivering about the 1st of August. No agreement was made with Stevens & Co. at this time with respect to the manufacture of the goods. The parties then undertook to find jobbers who would handle the goods. The same day they interviewed Mr. Morrissey, representing Tefft, Weller & Co., one of the oldest and largest dry goods jobbers in the city of New York, and he finally said to them, "I will buy a box of these goods at 31½, 6 per cent. off, 10 days from the 1st of October," and they accepted this offer and left samples with him, and he in their presence gave them to one of his salesmen, named Rohr, with instructions to go out and sell the goods, and requested them to send him, as soon as they could, 30 to 40 samples, so that he could send them out on the road. Later in the day, in the presence of the parties, Rohr placed an order with a customer for 11 pieces of the goods, 5 of one color, and 3 of each of the other colors. A box contains 36 pieces, or 1,400 yards. On the same day the defendant said to the plaintiff, after they had thus found a jobber who would deal in their goods and had seen the order placed for a sale of part of the goods, that he was delighted with the sale, and thought that they could make "big money on these goods, and we will go down to Stevens, and order the 400 pieces," whereupon they went to Stevens & Co., but did not find Mr. Stevens in. The defendant was about to leave for Europe, and the next morning he evidently changed his mind about this venture, for he refused to proceed further under his arrangement with the plaintiff. The plaintiff then asked for the samples, which the defendant had, and received them the next day. The defendant endeavored to induce another merchant to join with the plaintiff and finance the enterprise; but his efforts were unsuccessful. The plaintiff subsequently took the samples and endeavored to sell the goods; but he was unable to do so.

The plaintiff testified that, at the time the defendant suggested that they go to Stevens and order 400 pieces of the goods, the defendant also said "that he would furnish all the capital that was needed for the business." He further testified that it was understood that they were to continue the business for that season, which commenced about the 1st of August and would continue until about the 1st of March. It appeared that the expense of manufacturing the samples was between $4 and $5; but this, under the contract, was to be borne by the defendant. The defendant, on deciding to withdraw from the enterprise, wrote Tefft, Weller & Co., canceling the order for the case of goods placed with that company, and requesting that the samples delivered to the salesman be withdrawn. This is the only material

·evidence offered by the plaintiff, bearing on the measure of his damages.   The original agreement between the parties did not specify the amount of capital to be furnished, or who should furnish it; nor did it provide how long the enterprise was to be continued.   We are of ·opinion that the plaintiff was entitled to recover his share of the profits on the sale of the case of goods, an order for which had been placed, which would be $91.   There is no evidence with respect to other ·damages sufficiently definite and certain to found a verdict thereon. It is probable that other goods would have been sold; but there is no basis afforded by the evidence upon which the amount of sales that ·might have been made can be estimated.   We have, it is true, a basis for determining the amount of goods that might have been manufactured during the season; but that is not sufficient.   Whether there would have been ready sales, or any demand, for the goods, when samples were placed in the hands of agents, to go about in the trade, ·is too speculative for the ascertainment of damages which may be re·covered of a party who violates his contract.

The respondent, through his counsel, has suggested that he will ·consent to our increasing the recovery to cover the plaintiff's profits ·on the case of goods, in the event that we decide that he is entitled to those profits; and, since it is improbable that the plaintiff could ad·duce evidence on a new trial which would warrant a further recovery, we think the judgment should be modified, by making the recov·ery $91, and, as thus modified, affirmed, without costs.   All concur.