[No. 14329.  Department One.  December 26, 1917.]

L. H. GRIFFITHS, *Appellant*, v. JOHN H. VON HERBERG *et al.*, *Respondents.*[1]

BROKERS—CONTRACT FOR SERVICES—CONSTRUCTION.  An agreement whereby plaintiff was employed to obtain a suitable building and a ten-year lease for a moving picture business, and was to receive as compensation for his services ten per cent of the profits of the business, does not constitute a partnership nor a joint adventure, but is no more than a specific employment with compensation fixed by a percentage of the profits, subject to the rules applicable to agency in brokerage contracts.

SAME—ACTIONS FOR COMMISSIONS—COMPLAINT—SUFFICIENCY.  In such a case the broker, while entitled to maintain an action for an accounting for the profits, need not do so where an accounting is not necessary because of the fact that it is admitted by a demurrer that the profits amounted to a stated sum; and his complaint as for money due upon an express contract is sufficient, there being no complication of the accounts, nor any fiduciary relation existing between the parties, nor any other state of facts calling for equitable cognizance.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 12, 1917, upon sustaining a demurrer to the complaint, dismissing an action on contract, tried to the court.  Reversed.

*Will H. Thompson*, for appellant.

*Jay C. Allen*, for respondents.

[1]Reported in 169 Pac. 587.

FULLERTON, J.—Appellant, Griffith, brought an action against respondents, Von Herberg and Jensen, upon an alleged contract for an interest in the profits of a moving picture theater. The allegations of the complaint are as follows:

"(1)   That, during the year 1913, the defendants, John, H. Von Herberg and Claud S. Jensen, as a corporation under the name and title of Jensen and Von Herberg, Incorporated, were engaged in the conduct and operation of the certain theater in the city of Seattle, known as the Alhambra Theater, and during which conduct and operation thereof this plaintiff was, from time to time, assisting them in and about the management and operation thereof, and said defendants became and were fully aware of this plaintiff's skill, energy and ability to aid and assist in the conduct and operation of a theater, and of his intention to attempt to cause the building of a large and fine theater upon certain property in the city of Seattle, known as lots five (5) and eight (8), block twenty-six (26), A. A. Denny's Third Addition to the city of Seattle, which theater was afterwards built and thoroughly completed upon said lots, and became known as the Liberty Theater.

"(2)   That the lots aforesaid were owned by the estate of Catherine L. Blaine, deceased, of which estate E. L. Blaine was the administrator.

"(3)   That, while negotiations were pending between this plaintiff and the said Blaine, representing the said estate, the defendants, John H. Von Herberg and Claud S. Jensen, entered into negotiations with this plaintiff for the purpose of securing a lease upon said theater, when the same should be completed, and for an arrangement with this plaintiff by which this plaintiff should proceed and continue to carry on said negotiations for the construction of said building, to cost not less than twenty-five thousand ($25,000) dollars when completed, the said defendants to obtain a lease for ten (10) years upon said building at the rate, price and monthly rental of one thousand ($1,000) dollars per month, and to operate said theater for such period of ten (10) years, the profits arising from such operation to be divided between this plaintiff and the defendants upon the rate and basis that the defendants should jointly receive ninety per cent (90%) of said profits and this plaintiff to receive ten per cent (10%) of such profits, if any should be derived from such operation.

"(4)    That in accordance with said negotiations, other changes were made in the character of the building constructed by the said Blaine, as such administrator, and the same was so greatly enlarged, improved, changed in form and embellished, as to be of the full cost and value of one hundred and sixty-five thousand ($165,000) dollars. That, during all the time of said negotiations, and the construction and completion of said theater, and the furnishing of the same, and preparing the same for operation, the defendants relied upon this plaintiff to perfect said negotiations and to secure for them a lease of said premises for ten (10) years, at the sum and price, first, of one thousand ($1,000) dollars per month, and later when said building was to be so enlarged and improved and furniture furnished by the said Blaine, as such administrator of said estate, the rental should be increased to one thousand two hundred and fifty dollars ($1,250) per month, and defendants continued to agree and pledged and bound themselves by parol with plaintiff that this plaintiff should have an interest of ten per cent (10%) in the profits arising from the conduct and operation of said theater, which they, the defendants, pledged themselves to carry on and operate as a moving picture theater, and to furnish all and everything necessary for the complete outfit, operation and conduct of a first-class moving picture theater, and to receive and take care of the moneys arising from the operation of the same, and to pay over to this plaintiff the one-tenth (1-10) interest of all receipts from the operation of such theater, less the actual cost of operating the same.

"(5)    That thereafter this plaintiff, acting in his own behalf and in that of the defendants, fully carried out all of the wishes of the defendants and of himself, and induced the aforesaid Blaine, as administrator of the aforesaid estate, to complete in all respects what is now known as the Liberty Theater building on said lots, and the same fully furnished and ready for use by the said Blaine, as such administrator, was leased to the said defendants under the name and style of Liberty Theater Co., Inc., and the defendants took possession of said theater, and have ever since operated the same since the 19th day of November, 1913.

"(6)    That, by the operation and conduct of said theater, the defendants have derived and received a profit over and above all expenses of about ten thousand (10,000) dollars per month for each and every month, and will continue in the

future to realize a profit of at least ten thousand ($10,000) dollars, for each and every month of the term of their ten (10) year tenancy, under the conditions of their lease, and have, since the beginning of said lease, derived and received a profit over and above all expenses to this date the sum of three hundred thousand dollars ($300,000), and for the period extending from the time of the filing of this complaint to the determination of their aforesaid ten year lease, the defendants will realize by the conduct of said business the further sum of at least nine hundred thousand ($900,000) dollars, a one-tenth (1-10) interest in which said profits belong to, and when received in the future will belong to, and of right should be paid to this plaintiff, but that the said defendants have heretofore, although often requested by plaintiff to pay him his portion of the aforesaid profits from time to time as they have received them, his one-tenth (1-10) interest therein, have refused and wholly failed to pay him the whole or any part thereof, and have utterly repudiated their contract and agreement with plaintiff and have denied every right and claim of plaintiff in the whole or any part of such profits. That there is now actually due and owing to the plaintiff from the defendants for his one-tenth (1-10) interest in the profits already received and converted by them to their own use, the sum of thirty thousand ($30,000) dollars, and the one-tenth (1-10) interest of the profits, which reasonably should be and will be derived by the defendants from the future operation of said property, should be and is in the sum of ninety thousand ($90,000) dollars."

The respondents demurred upon the grounds, (1) that said complaint does not state facts sufficient to constitute a cause of action; and (2) because the plaintiff has no legal capacity to sue or to maintain the action.

The demurrer was sustained by the court, and the appellant electing to stand upon his complaint and refusing to plead further, judgment of dismissal was rendered against him. Appeal has been taken from this judgment on the pleadings.

In sustaining the demurrer to the complaint, no intimation was given by the trial court as to the grounds for its ruling. In this court the respondents seek to sustain the judgment

on the theory that the allegations of the complaint disclose the relationship either of partnership or of a joint adventure, and that the proper action should have been for an accounting of the alleged share in the profits of the undertaking. We think the allegations of the complaint are not susceptible of the interpretation sought to be put upon them by the respondents. Their purport merely is that the respondents employed appellant to obtain the building of a suitable structure for their moving picture business and secure a lease of the premises for a period of ten years at a stated rental, for which appellant was to receive, as compensation for his services, ten per cent of the profits of the enterprise. The mere fact of a share in profits of itself constitutes neither a partnership nor a joint adventure. There must be other facts showing that relationship to have been the intent of the parties, or such as to estop denial of it as against third parties. There is no question of third parties here, but one simply between the parties, and we think the allegations show that the contract was one of employment as a broker.

In Bates on Partnership, § 43, it is said:

"A person who is to receive a share of the profits as compensation for services as servant, clerk, manager, broker, or any other agent, is not a partner. The only difference between him and any other employee is that his salary or wages is contingent. His connection with the firm is inconsistent with a partnership, for it precludes the rights, duties, powers and liabilities of that relation. In most of the cases cited in the notes, the contract of the parties expressly stated that the share of the profits was for services; in others that conclusion was inferred."

See, also, Gilmore, Partnership (2d ed.), p. 18; Conyngton, Partnership Relations, § 16.

In Gross on Real Estate Brokers, § 213, it is stated:

"Sometimes brokers name a fixed amount as their compensation. When this is done and agreed to by the broker's employer, it constitutes an express agreement. An express agreement, however, need not necessarily specify a fixed sum.

It is an express agreement if the broker and his employer agree that the broker shall have as his compensation all in excess of a fixed sale price, or that the broker shall have a certain part of the 'profits' on a sale."

The rule stated as to profits as compensation has been recognized in this state in the case of *Kauffman v. Baillie*, 46 Wash. 248, 89 Pac. 548, where the right of a broker to a proportion of the profits to be realized on a resale of land secured for the employer was sustained as a valid contract.

In the case at bar, the facts pleaded show no more than an employment to do a specific thing, for which the agreed compensation should be a certain share of the profits made by the employer as a result of securing a certain stand for his business. There is no provision for a joint conduct of the business of the moving picture theater, nor for the handling of the building operated under the lease. Appellant is not disclosed as having any voice in the conduct of the affairs of respondent subsequent to the bringing about of the deal. He never obtained any interest in the business of respondents, other than a right to a proportionate share of its net profits as compensation for past services rendered. The transaction clearly appears to be one of brokerage, falling under the rules applicable to agency in that class of contracts.

This presents the further question whether the broker would have a right of action at law to recover the compensation due under his contract, after the commission has been earned and the contract repudiated by the employer, or whether he would be relegated to an action of accounting for the purpose of establishing his proportionate share of the profits. While it is a general rule that ordinarily an agent cannot bring an action for an accounting against his principal, such an action is recognized as permissible where the relation between them is of a fiduciary character or the transactions are so involved and complicated that the remedy at law would be inadequate. The courts have accordingly held that an agreement to pay out of profits in some cases confers

a right to an account upon employees, agents and brokers. Lindley, Partnership (8th ed.), p. 569; Bates, Partnership, § 922; 4 Pomeroy, Equity Jurisprudence (3d ed.), § 1421, note 3.

But conceding that, in certain cases, the recovery of a share of profits of a business is properly a matter for procedure by way of an action for an accounting, it is not necessarily so. In the present case, the pleadings show no conditions requiring that an accounting be had. The admitted allegations of the complaint are that the profits amount to a stated sum and that appellant is entitled to ten per cent thereof. The evidence does not show any complication of the accounts, nor that any fiduciary relation existed between the parties, nor any other state of facts calling for equitable cognizance. The complaint states a cause of action for money due on an express contract, and is sufficient under our statute abolishing the distinction between actions at law and in equity, so far as stating a cause of action is concerned. If, in the course of the trial, necessity should arise for a reference to a referee or master to take an account, such course is within the power of the court in that class of cases which may have been instituted as a law action and in which matters of equitable cognizance arise. *Smith v. Bodine,* 74 N. Y. 30; *Gee v. Pendas,* 66 App. Div. 566, 73 N. Y. Supp. 247.

We think appellant's complaint stated facts sufficient to constitute a cause of action. The judgment is reversed.

ELLIS, C. J., MAIN, and WEBSTER, JJ., concur.

PARKER, J. (concurring)—It seems to me that the complaint of the plaintiff would not state an existing matured cause of action but for the allegation therein that the defendants "have utterly repudiated their contract and agreement with plaintiff and have denied every right and claim of plaintiff in the whole or any part of such profits." I think the contract pleaded cannot be recovered upon until the period for the computing of the profits has terminated, which

ordinarily would be the whole period of ten years named in the contract, because, until that period elapsed, there would be no means of knowing that there would be any profits. Indeed, the losses of the latter portion of that period might exceed the profits of the earlier portion of the period. Manifestly, under the contract as pleaded, there would then be no profits from which the plaintiff could be compensated. But the defendants may put themselves in such position as to work a termination of the contract period before the expiration of ten years, or rather in such a position that the plaintiff may elect to so regard their action. I think, when the defendants repudiated the contract and denied all right of the plaintiff to compensation thereunder, the plaintiff then became entitled to recover compensation computed upon past profits as if the entire period agreed upon were at an end; that is, the defendants having repudiated the contract, the plaintiff had the right to elect to recover then or wait until the expiration of the agreed ten-year period. I do not think the plaintiff can recover upon any profits arising after he has made such election, for the theory of his recovery must, as I view his rights, be rested upon the termination of the profit period, whether such period be at the end of the agreed ten years or at an earlier date by the election which he may be privileged to make because of the defendants' repudiation of the contract.

I concur in the result reached by Judge Fullerton.