[No. 15474.  Department One.  January 20, 1920.]

# A. P. DONAHUE, *Respondent*, v. H. J. HASKAMP *et al.*, *Appellants.*[1]

RECORDS (3)—RECORDING WRITTEN INSTRUMENTS—NOTICE. The recording of an agent's contract for a share in the profits of lands purchased is notice to subsequent purchasers of his rights.

EQUITY (38)—MAXIMS—CLEAN HANDS. A conveyance of land with notice of defendant's rights therein so that his interests were not affected is not a fraud that would defeat plaintiff's right to equitable relief.

JOINT ADVENTURES—PROFIT SHARING IN PURCHASE OF LANDS. A joint adventure, and not a partnership, is constituted by an agreement whereby defendant employed plaintiff as agent in purchasing timber land, the plaintiff to receive a certain per cent of the net profits and to share the same proportion of the losses, where there was no mutual agency and the control of the lands purchased was entirely in the defendant.

SAME—RIGHTS OF PARTIES—TERMINATION. In such a case, where, owing to the war, it was impossible to dispose of the lands at a profit, it would be unconscionable to hold the property indefinitely; and the purchases having been made and the capital invested, plaintiff should be given one year to dispose of the property and account for the proceeds in accordance with the contract, at the end of which time it will be deemed performed and the undertaking terminated.

Appeal from a judgment of the superior court for Klickitat county, Darch, J., entered November 20, 1918, in favor of the plaintiff, in an action for equitable relief, tried to the court. Modified.

*Sharpstein, Smith & Sharpstein,* for appellants.

*Veazie, McCourt & Veazie* and *Brooks & Brooks,* for respondent.

HOLCOMB, C. J. — On September 9, 1911, plaintiff and defendant Haskamp entered into a written contract wherein defendant agreed to employ plaintiff as

[1] Reported in 187 Pac. 346.

agent in purchasing timber land, defendant agreeing to pay the purchase price, all necessary expenses incurred in the purchase, the taxes and other expenses necessary or authorized by defendant. It was further agreed that, after deducting all expenses, as set forth, and interest upon all expenditures at eight per cent per annum, compounded annually, plaintiff would receive twenty-five per cent of the net profits. Plaintiff agreed to inspect the lands, make reports to defendant, and to negotiate and close purchases from defendant, when authorized by defendant. Title to the property was agreed to be in defendant. The losses, if any, were to be shared in the same proportion as the profits.

Pursuant to this agreement, plaintiff purchased certain timber land for defendant Haskamp, the purchases covering a period of about three years and the total expenditure being about $114,000. In 1914, defendant Haskamp agreed with others for the construction of a railroad to or near the timber lands, plaintiff agreeing that $25,000 paid by defendant as a bonus for the construction of the railroad be charged as part of the expenditure for the land, and agreeing that he would perform services in seeing to the construction of the railroad and application of the bonus. Plaintiff did later perform those services and the railroad was completed about July 15, 1916.

On August 2, 1916, plaintiff caused the contract with defendant, together with a certified list of the land purchased under the contract, to be filed of record in the office of the county auditor of Klickitat county, in which the land was situated.

On September 25, 1916, defendant conveyed by deed to the Washington Farm & Fruit Association, a corporation organized and owned by members of defendant's family and under his control, all of these lands.

The deed in no way purported to recognize the rights of plaintiff in the land.

This action was forthwith commenced, plaintiff seeking a reconveyance of the land to defendant. The defendant, by his answer, consented to a reconveyance and asked that the land be sold under the direction of the court and an accounting be had between the parties. The court entered a decree ordering a reconveyance and affirming the rights of plaintiff, by virtue of his contract, in the land.

The land was bought at a price of from fourteen to fifteen dollars an acre. When the taxes and cost of fire protection and other expenditures, together with the interest provided for in the contract, are taken into consideration, it appears that, in order to realize a profit for the parties to the contract, it would have been necessary to sell the lands in 1916 for between twenty-five and thirty dollars an acre. Due to causes that could not be foreseen, principally the fact that the country was engaged in the European war, by the time these timber lands were purchased, there was little or no money seeking this kind of an investment and no sale could be made. The market for timber land steadily declined, and by the summer of 1916 it did not appear that it would be possible to realize a profit on this undertaking.

For some time prior to the summer of 1916, defendant's health had been very poor and his sons-in-law and other relatives, some of whom later became stockholders in the Washington Farm & Fruit Association, had been handling his business affairs. The capital with which he had been doing business for thirty-six years past was originally inherited by his wife, and with the idea of relieving both of them of the personal care and attention their properties demanded, the cor-

poration was organized and the bulk of their property, including the timber land, was conveyed to it. Plaintiff's contract was of record and any purchaser of the timber land to which his contractual rights attached would be charged with notice of his claim of interest in the land. Besides, at that time it seemed to defendant that any further opportunity for profit growing out of the transaction had ceased. We find it difficult to say that defendant is guilty of fraud in the transaction, so that his prayer for relief before a court of equity will not be heeded. His conveyance of the land to the corporation did not in any way divest plaintiff of any rights he has in the land by virtue of the contract. Therefore, when the land is reconveyed by the corporation to the defendant, plaintiff's rights are in exactly the same condition they always have been and are in no greater hazard.

We are not impressed with appellant's contention that this contract made the parties partners in the undertaking. In no place in the contract, except one which will be presently noted, is there language indicating that it was the intention of the parties to constitute a partnership between them. It is true, the contract did provide for a division of the profits or losses. But not every contract so providing constitutes the parties thereto partners. That is not the sole test of partnership. None of the other indicia of partnership are present in the relation between these parties. Take the very definitions and citations of appellant and it is plain that the parties do not come within them. Appellant quotes from Law of Partnership, Bates, vol. 1, § 17, to show that, if the actual relation of the parties are those of partners, their declarations in their contract will not change that relation. Here we have no actual relation between the parties as

partners. There was lacking the mutual agency necessary for that relation. Donahue was totally unable to bind Haskamp to any agreement or by any purchase or sale without Haskamp's authority in each specific transaction. He did not purchase one acre of land without first consulting Haskamp, and the record shows that, before expending any money whatever to further the scheme they had in mind, he was obliged to consult Haskamp for authority. He could not sell until Haskamp placed a price upon the land or signified a willingness to accept a stated price. The relation between these parties comes more nearly under the definition of a joint venture. It related to the single transaction of the purchase and sale of timber land, although that transaction might comprehend a business to be continued for a number of years. *Zeck v. Bell,* 94 Wash. 344, 162 Pac. 363. Similar arrangements have been uniformly construed as joint adventures rather than copartnerships. *Seattle Land Co. v. Day,* 2 Wash. 451, 27 Pac. 74; *Kauffman v. Baillie,* 46 Wash. 248, 89 Pac. 548; *Bane v. Dow,* 80 Wash. 631, 142 Pac. 23; *Seymour v. Freer,* 8 Wall. (75 U. S.) 202; *Shaeffer v. Blair,* 149 U. S. 248.

But even though this be a joint adventure and not a copartnership which might be dissolved and the partnership affairs wound up at the suit of either party, and while we might hold in a proper case with the majority of the courts that, in the case of a joint adventure, either party has a right to insist that the property be disposed of in the contract method, instead of by the court, yet it would be unconscionable to hold that this property could be tied up for an indefinite time with increasing liability for a loss on the whole transaction. The parties have completed the purchases apparently intended by the contract. The

capital invested is drawing interest at eight per cent, compounded annually. The plaintiff testified that it was his belief that, within three years after the termination of the war the country was then engaged in, he would be able to dispose of the lands at a profit to the parties. It is a fact of common knowledge that the unusual conditions brought about in the money market and in business generally by the war depressed the market for timber land, and it seems equitable that plaintiff should have another year within which to produce purchasers for the timber and land, and the decree of the trial court should be modified to allow plaintiff one year to dispose of the property and account for the proceeds in accordance with the contract between them, at the end of which time the contract will be deemed performed and the undertaking terminated. It is so ordered.

Appellant, having obtained a more favorable judgment in this court, is entitled to judgment for costs on appeal.

MITCHELL, PARKER, MAIN, and MACKINTOSH, JJ., concur.