Outlaw & Seale and Vincent F. Kilborn, all of Mobile, for appellant.

196 So. 278

### STATE ex rel. LITTLE, Superintendent of Banks, v. LAURENDINE.
### 1 Div. 88.

Supreme Court of Alabama.

April 4, 1940.

Rehearing Denied June 6, 1940.

Wm. V. McDermott and Harry T. Smith & Caffey, all of Mobile, for appellee.

## PER CURIAM.

The averments of the petition of Laurendine, as last amended, show the creation of an express trust in the Barrett property ultimately conveyed to the Peoples Bank of Mobile, in consummation of the joint adventure participated in by Laurendine on the one part and the bank through its president on the other to acquire said property, and the petitioner is entitled to participate in the profits arising therefrom after reimbursing the bank for the money advanced, with interest, and other lawful charges against said property, and therefore entitled to an accounting as prayed in said petition.

The demurrer to the petition was therefore properly overruled, and the decree of the circuit court is due to be affirmed.

Affirmed.·

All the Justices concur, except THOMAS, J., who dissents.

## THOMAS, Justice (dissenting).

The liquidator came into possession of an interest in the land in question in the City of Mobile and duly sought to sell the same for $2,500. Laurendine objected to the sale on the grounds of inadequacy of the offer of purchase price, and also prayed for an accounting.

The petition for leave to intervene contained the claim made ·in July 19, 1927, to the superintendent of banks, which, among other things, averred:

"One Thomas C. Barrett, who died prior to June 25th, 1919, was at the time of his ·death indebted to the Peoples Bank of Mobile, Alabama, in a considerable sum. Subsequent to his death and prior to June 25, 1919 I entered into an agreement with Florence E. Barrett, the widow of the said ·Thomas C. Barrett, and who was his sole devisee and legatee under his last will and testament, by the terms of which I agreed to purchase all of the real estate belonging to said Estate for the sum of $2,250.00 and the assumption by me of all of the debts of the said Thomas C. Barrett. Thereafter Mr. Alfred L. Staples as President of the Peoples Bank stated that if I ·would give the said bank the benefit of the contract which I had with Mrs. Barrett that the Bank would put up the money to pay Mrs. Barrett and also with which to pay the creditors of the said Thomas C. Barrett; that I would be authorized to manage the property and out of the rents collected and the proceeds of sale of the property the bank was to be paid all monies advanced by it, together with interest, and after these amounts had been paid any profit remaining was to be equally divided between the bank and me.

"On June 25, 1919, this agreement was then made in writing between me and the said Peoples Bank of Mobile, through Mr. Alfred L. Staples as its President, a copy of said written agreement being hereto attached and made a part of this claim as if fully set out herein.

"Pursuant to the agreement Mrs. Florence E. Barrett individually and as Executrix of the last will and testament of Thomas C. Barrett, deceased, on June 29, 1919, conveyed all of the property belonging to the Estate of the said Thomas C. Barrett to Alfred L. Staples, a .copy of which is hereby attached marked 'Exhibit B' and made a part of this proof of claim as if fully set out herein.

"Subsequently, Mr. Alfred L. Staples conveyed to the said Peoples Bank of Mobile all of the property described in the said deed from Florence E. Barrett."

This claim by petitioner was filed pursuant to Sections 6310 and 6312 et seq. of the Code, and fixed the status of Laurendine's cause of action against the bank being liquidated and affecting the properties in question. Cooke v. Little, as Supt., Ala. Sup., 194 So. 853;[1] Jackson v. Whitesell, 213 Ala. 369, 104 So. 662; Williams, Supt., v. Central Hanover Bank & Trust Co., 229 Ala. 646, 159 So. 92.

To this petition the demurrer of James B. Little, as Superintendent of Banks, was sustained.

The amended petition, to which demurrer of the Superintendent of Banks was overruled, contained, among other things, the following averments:

"Petitioner entered into an agreement in the early part of June, 1919, with one Mrs. Florence E. .Barrett whereby petitioner agreed to purchase through and from her, and she agreed to sell and convey to petitioner, all property whether real, personal and mixed, in the County of Mobile, Alabama, owned individually by said Mrs. Barrett or acquired by her as the Executrix and sole devisee under the last will and testament of her deceased husband Thomas C. Barrett; the consideration moving to

---

[1] Ante, p. 319.

said Mrs. Barrett to be the sum of $2,250.-00 in cash and the assumption and payment by petitioner of all the debts of the estate of said Thomas C. Barrett, deceased. With this agreement, petitioner went to said Peoples Bank, which was then engaged in the general banking business in the City and County of Mobile, Alabama, to borrow the necessary money, towit, approximately $10,000.00, to enable him to carry out said agreement. Mr. A. L. Staples, then President of said Bank and the officer thereof to whom petitioner talked to secure the loan, and then and there acting within the line and scope of his authority as such officer of the Peoples Bank, stated to petitioner that if petitioner would give said bank a joint benefit in said Agreement or contract that petitioner had with Mrs. Barrett that his said bank would put up sufficient money to pay Mrs. Barrett and the creditors of her said husband's estate, and to clear the property of encumbrances, with the understanding that out of the rents collected and out of the proceeds of the sale of the said properties, said bank was to be first repaid all monies advanced by it, together with interest and any charges that might arise against the properties, after which any profits remaining were to be equally divided between said bank and the petitioner. And petitioner avers that he agreed to this proposition and that said Peoples Bank acting by and through its said President A. L. Staples, confirmed said agreement by writing in words and figures as follows:—

" 'Peoples Bank of Mobile
" 'Office of the President
" 'A. L. Staples
" 'Mobile, Alabama
" 'June 25, 1919.

" 'Mr. P. B. Laurendine
" 'Mobile, Alabama
" 'Dear Sir:—

" ' 'Confirming our conversation to-day I beg to advise that in consideration of our joining in the purchase of the property of T. C. Barrett, deceased, and Florence E. Barrett individually, we will put up all money that is necessary to clear the property from encumbrances, and we will then sell said property to the best advantage, proceeds of all sales to be applied,

" 'First: To the return of principal that we have put into the property, together with all interest thereon. Second: After the payment of all charges of any kind that might arise against the property, any

profit resulting therefrom to be divided equally between us.

" 'Yours very truly,
" '(signed)    A. L. Staples
" 'Above proposition hereby accepted,
" '(signed)    P. B. Laurendine.'

"Under said agreement with said Bank, the necessary purchase money was advanced to petitioner by said bank to carry out petitioner's agreement of purchase with said Mrs. Barrett and on to-wit June 26, 1919, petitioner paid to said Mrs. Barrett in cash the sum of $2,250.00 and she did on said date execute and deliver unto said Alfred L. Staples a deed conveying all real, personal and mixed property owned by her in Mobile County, Alabama, individually and as Executrix of the last will and testament of Thomas C. Barrett, her deceased husband, and said Alfred L. Staples thereupon took and held the legal title to said property in trust for said Peoples Bank and petitioner and subject to the terms of the aforesaid agreement until to-wit October 17, 1924, when the said Alfred L. Staples and wife, by deed dated October 17, 1924, conveyed the legal title to the identical property described in the Barrett-Staples deed above referred to, unto said Peoples Bank, which bank thereupon held said legal title to said property in trust for itself and petitioner, subject to the terms of the aforesaid agreement. * *

"Petitioner further avers that under and by virtue of the agreement entered into on to-wit said June 25, 1919, between petitioner and said Peoples Bank by and through its President Staples, your petitioner is entitled to one-half of the proceeds of the rentals and sales of all properties, real, personal and mixed described in and covered by said Barrett-Staples deed and subsequently conveyed by said Staples to said Peoples Bank."

The demurrer to the bill challenged the conclusions of the pleader, and that,

"It affirmatively appears from the petition, as amended, that no consideration other than a void consideration was furnished by P. B. Laurendine by the contract entered into between Laurendine and A. L. Staples, as President of the Peoples Bank of Mobile. * * *

"For aught that appears, Mrs. Florence E. Barrett, as executor of the Estate of Thomas C. Barrett, had no authority to enter into such contract with said P. B. Laurendine. * * *

"For aught that appears there were no rents collected.

"For aught that appears there were no sales of the property.

"For aught that appears the Bank has never been repaid any money advanced by it, or any interest or other charges that might arise against said property. * *."

The inquiry, then, of the amended petition is whether a legal and binding contract and interest in the property in question is shown to have been invested in Laurendine by the Staples letter and deeds that are exhibited. The letter between the two individuals is the document on which petitioner must rest his claim or property interest, if such he has.

The petition averred that to the desired end the bank's money was advanced through Staples to clear the property of liens and to procure conveyances by Barrett to Staples, and from him to the bank by conveyance of a later date.

Under the decisions of this court, did the bank take and hold the title to the lands under a purchase money resulting trust for petitioner and the bank, subject to the terms of the oral agreements of Laurendine with Barrett and under conditions stated in the letter from Staples to Laurendine?

It has been declared that to set up a resulting trust it is required that the consideration be paid by or on behalf of the claimant as *cestui que trust* at the time of or prior to the purchase of the lands so subjected. Cunningham v. Wakefield, 217 Ala. 374, 115 So. 877; Guin v. Guin, 196 Ala. 221, 72 So. 74; Haney v. Legg, 129 Ala. 619, 30 So. 34, 87 Am.St.Rep. 81; Lehman v. Lewis, 62 Ala. 129; Preston v. McMillan, 58 Ala. 84; Tilford v. Torrey, 53 Ala. 120.

We may observe of a partnership that in view of the letter of Staples of date of June 25, 1919, Section 9372 of the Code has no application. In Cunningham v. Staples, 216 Ala. 531, 113 So. 590, it was declared, of a partnership, that the agreement must include *sharing profits and losses,* and that *express stipulations for sharing losses is not necessary.*

The facts averred show that no moneys were paid by Laurendine to Mrs. Barrett; that all moneys that were paid were advanced either by Staples or the instant bank, who took title to the lands.

It will be further observed that there is no allegation in the petition that the purchase money, or any part thereof, was loaned by Staples or the bank to Laurendine and paid by him to Mrs. Barrett, before or at the time she invested Staples, or he invested the bank with legal title to the property. The first paragraph of the letter indicates that there was no loan to Laurendine by Staples or the bank, but that the moneys were advanced by the bank through Laurendine to the owners of the property, who conveyed to Staples and he to the bank advancing the moneys.

The situation is not changed by the subsequent claim filed with the liquidator in 1927. Thus Laurendine seeks to support this phase of his case by saying that if the bank would put up the money to pay Mrs. Barrett and also to pay the creditors of Thomas C. Barrett that "I (Laurendine) would be authorized to manage the property and out of the rents collected and proceeds of the sale of the property the bank was to be paid all moneys advanced by it, * * *." (Parenthesis supplied.)

As to this phase of his claim, it is not averred that he performed any such acts of management or discharge of alleged debts in question. The question for decision is resolved by the averred facts. The petition does not show that actual money was paid or loaned to Laurendine by Staples. It does not show that there was a loan of purchase money made to Laurendine by the bank. *It does not show that there are binding, executory promises by Laurendine as to the property for the bank or Staples,* or that were executed by petitioner Laurendine before the interest in the land was vested. Scott v. Vizard, 207 Ala. 70, 91 So. 806. There is nothing averred to have been done by Laurendine in his petition for intervention or in his claim to the liquidator that placed him in the possession of the land before he went to Staples with his parol agreement with Mrs. Barrett or thereafter before the conveyance to the bank by Staples, or that bound him to any party for any act or sum.

The promise of Laurendine to or with Mrs. Barrett, without a binding executory agreement, was not an efficient consideration to support a binding contract between Staples, the bank, its statutory liquidator or Laurendine. That is, the promise of Laurendine to Mrs. Barrett for the sale of the land, without a note or memorandum thereof or that to answer for the debts of Thomas C. Barrett, deceased, was contrary

to the statute of frauds. Code of 1923, § 8034.

Mrs. Barrett's verbal agreement with Laurendine was not executed; instead she executed a new and bonding contract with Staples or his bank. Therefore, the void promise from Laurendine to Mrs. Barrett, or the estate of Thomas C. Barrett, deceased, was not an efficient consideration when Mrs. Barrett conveyed to Staples or he conveyed to the bank being liquidated under the statute.

The decisions are to the effect that a resulting trust must arise and vest immediately upon the payment of the consideration, and exists on the delivery of the conveyance. Owens & Co. v. Blanks, 225 Ala. 566, 144 So. 35. In other words, no resulting trust was set up for Laurendine in his claim, which was only an unenforcible promise to one-half of the profits, if such resulted from the sale of the property. Allen v. Caylor, 120 Ala. 251, 24 So. 512, 74 Am.St.Rep. 31. That is the contract was in 1919, and to establish a resulting trust a valid consideration must have been passed from Laurendine to the grantor as required by our decisions. This claim and the pleading rested thereon fails to aver such a relation and binding obligation on Laurendine to any person for any sum.

The claim exhibited and filed by Laurendine with Hon. C. E. Thomas, as Superintendent of Banks, on July 19, 1927, is of controlling effect, stating the facts as petitioner then understood them. It is declared by this court that exhibits support the pleading and control if there is inconsistency between the pleading and the exhibit declared upon. Grimsley v. First Avenue Coal & Lumber Co., 217 Ala. 159, 115 So. 90.

The claim filed with the superintendent of banks was within the life of that banking institution and its managing officials. The verbal agreement between Laurendine and Mrs. Barrett was for the conveyance of all the *real property only* belonging to the Barrett estate and not for the conveyance of *real and personal property*. The fact that in the Barrett deed there is a provision conveying, transferring and assigning to Staples all property real, personal and mixed of every character and description whatsoever that Mrs. Barrett owned or claimed to own in the County of Mobile as an individual or as executrix of the last will and testament of Thomas C. Barrett, deceased, will not affect the claim made by Laurendine to the Superintendent of Banks.

In other words, the claim sought to be propounded under the statute and order of the court of equity administering the affairs of the defunct bank is that now sought to be insisted upon by way of intervention in the court having jurisdiction and administration of the trust funds in question.

What of the said oral agreement between Laurendine and Mrs. Barrett and that to Staples and the bank to secure to the latter the benefit of his agreement with Mrs. Barrett?

The claim propounded in 1927 purports to give Laurendine the right of management of the properties in question. We find no such provision for management and control reserved to Laurendine in the deed from Mrs. Barrett in her individual or representative capacity, nor does the instant pleading show any fact of such reservation of management, control and sale of the properties conveyed by Barrett to the bank.

In order for Laurendine to have standing in a court of equity he must aver and prove that he had the right of management and control and had done his part or stood ready to do whatever was required of him under the agreement to such end. There is no allegation in his claim propounded to the superintendent of banks or in his pleading for intervention that he ever offered, attempted or had exercised a right of management or had control of the real properties in question or that he furnished any valuable consideration to the end to be obtained in the realization of profits.

What are the rules of joint adventure declared by this court and courts of last resort in other jurisdictions?

It was said in Anderson v. Blair, 202 Ala. 209, 80 So. 31, that a majority of the contracts of joint adventure do not point out precisely what each party is to do in the premises. Kenan v. Moon, 221 Ala. 286, 128 So. 379; 48 A.L.R. 1058; Lord v. Pathe News, Inc., 2 Cir., 97 F.2d 508.

In the second appeal in the case of Anderson v. Blair, 206 Ala. 418, 90 So. 279, 280, it is stated that the agreement was that the government would deal with Blair alone and that "appellants were to assist in its execution." It was stated: "Where contracts were entered into by one joint ad-

venturer in his own name, and he was to pay other members only such part of the profits as he thought they were entitled to, having unlimited discretion, he was neither legally nor morally at fault in declining to recognize the right of any of his joint adventures to demand or receive any part of the compensation paid to him, or in refusing to submit the matter of asserted apportionment to arbitrators."

The rule of pleading is further stated in Saunders v. McDonough et al., 191 Ala. 119, 67 So. 591, that "a complainant, in order to show a right to share in the proceeds of the joint enterprise, must either allege that he has performed his full share of all the acts incident to the accomplishment of the enterprise in accordance with the common agreement, or else that he stood at all times ready and willing to do so, is not applicable to joint adventures; such rule is applicable only to suits between parties to ordinary contracts where the obligations of complainant are precedent or concurrent." Irvin v. Irvin, 207 Ala. 493, 93 So. 517.

The distinction between a general partnership and a joint adventure is clearly indicated in Saunders v. McDonough, supra; Id., 201 Ala. 321, 78 So. 160; and as stated in the text of 23 Cyc. 453 A; Keiswetter v. Rubenstein, 235 Mich. 36, 209 N.W. 154, 48 A.L.R. 1049, 1055 et seq.; 63 A.L.R. 919 et seq.

In Christie v. Durden, 205 Ala. 571, 88 So. 667, there was a *joint contract* as to selling prices and thus reserving to each party the matter that affected the profits.

In Hale v. Brown, 211 Ala. 106, 99 So. 645, it was declared that the mere agreement between the real estate brokers engaged in promoting an exchange of properties for division of commission as contract of the other was not a joint adventure. 63 A.L.R. 911-N.

And in Van Heuvel v. Roberts, 221 Ala. 83, 127 So. 506, the rule that must be applied as between co-adventurers is that there were active duties discharged by all parties who participated in the contract. The law of partnerships was there involved. United States Fidelity & Guaranty Co. v. Hearn, 233 Ala. 31, 170 So. 59; 63 A.L.R. 919 et seq.; Kornman v. Raskin, 237 Ala. 490, 187 So. 709.

We have indicated that Laurendine did not subject himself to liabilities, or security for payment of an obligation, that he paid nothing of value to the grantors Barrett or Staples, retained no management or control of the real properties or of the selling price thereof (which fact so materially affected profits and paying off of losses and liens), and that he retained no authority as to purchase obligations or expenses of management.

The general authorities are to the effect that an important test of a partnership (general or limited) or joint adventure is a reservation of joint-contract and share in losses as well as share in profits. Gottlieb Bros. Inc. v. Culbertson's, 152 Wash. 205, 277 P. 447. There must be a contribution of money, material, knowledge, or services promotive of the common undertaking or enterprise. Simpson v. Richmond Worsted Spinning Co., 128 Me. 22, 145 A. 250.

In 33 Corpus Juris, pp. 841 and 842, are the following illuminating notes and illustrations:

" 'Partnership' distinguished. (1) 'The courts and authorities have not yet laid down any very certain definition of a joint adventure, nor have they established any very fixed or certain boundaries thereof, but generally they have been content to determine whether the given or conceded facts in a particular case constitute the relationship of joint adventurers or co-partners.' State v. Whitman County Super.Ct. 108 Wash. 443, 449, 184 P. 348. (2) A joint adventure may exist where persons embark in an undertaking without entering on the prosecution of the business as partners strictly, but engage in a common enterprise for their mutual benefit. Reid v. Shaffer, 6 Cir., 249 F. 553, 161 C.C.A. 479; Jackson v. Hooper, 76 N.J.Eq. 185, 74 A. 130; Sander v. Newman, 174 Wis. 321, 181 N.W. 822. (3) It is a partnership, not limited in a statutory sense as to liability, but as to its scope and duration. Ross v. Willett, 76 Hun. 211, 27 N.Y.S. 785; Hubbell v. Buhler, 43 Hun. (N.Y.) 82; Jones v. Walker, 51 Misc. 624, 101 N.Y.S. 22.

"Illustrations. (1) An arrangement, whereby plaintiff was to purchase timber lands as defendant's agent, and the profits and losses were to be shared, was more nearly a joint adventure than a partnership, where plaintiff could not bind defendant to any purchase or sale without defendant's authority in each specific transaction. Donahue v. Haskamp, 109 Wash. 562, 187 P. 346. (2) Where one having an option to buy land on terms of part pay-

ment in cash down, and together with an association, found a purchaser for the land at increased price, but on terms of annual payments with no cash down, and being unable to handle the option, joined two other associates, and the four opened a subscription list and others were induced to subscribe, one of the four being made trustee, the relation between all the parties was not a partnership, but a joint adventure. Sander v. Newman, 174 Wis. 321, 181 N.W. 822. (3) An agreement whereby one of the parties was to purchase a tract of land, which the others were to subdivide and sell, all parties to share equally the profits and losses after the price of the land and cost of subdivision were paid, created, not a technical partnership, but a joint adventure, which is governed by the same law. Central Trust Co. v. Creel, 184 Ky. 114, 211 S.W. 421."

In 15 R.C.L. 500 et seq., the authorities are collected and result stated on the scope and nature of the relation, good faith exacted of the several parties, the mutual rights to profits and losses, the right to contribution and the right to bind co-adventurers as to the subject matter. The relationship and line of the undertaking, and the exaction of good faith in that behalf and the termination of the relation existing are discussed. Notes 17 Ann.Cas. 1025; Ann.Cas.1912C, 203, Ann.Cas.1916A, 1214.

To the like effect are our cases collected in 12 Alabama Digest, pages 775 et seq., under the subject of "Joint Adventures", ☜1. Illustration may be found in Saunders v. McDonough et al., 191 Ala. 119, 67 So. 591; Murphy et al. v. Craft, 226 Ala. 407, 147 So. 176; Elledge v. Hotchkiss, 222 Ala. 129, 130 So. 893.

In Gottlieb Bros. Inc. v. Culbertson's 152 Wash. 205, 277 P. 447, 449, the required test for the creation of the relationship of a joint adventure is well stated as follows:

"To constitute a joint adventure, there must be more than the mere fact of a share in the profits of the business. There must be other facts tending to show that relation inter se, as the intent of the parties; or such facts as to estop denial of it as against third parties. Griffiths v. Von Herberg, 99 Wash. 235, 169 P. 587. See, also, Belch v. Big Store Co., 46 Wash. 1, 89 P. 174; Miles Co. v. Gordon, 8 Wash. 442, 36 P. 265.

"One of the most important tests of a partnership or joint adventure is whether there is a share in losses. Miles Co. v. Gordon, supra; State ex rel. Ratliffe v. Superior Court, 108 Wash. 443, 184 P. 348.

"It is manifest that there was nothing in the relationship shown between Filas and respondent which would constitute them joint adventurers under our cases. Neither were there any such facts shown as would estop them to deny a joint adventure as against third parties. That such tenancies, even upon conventional term leases, are not unknown, based upon rentals consisting of a percentage of the gross income, see Cissna Loan Co. v. Baron (Wash.) [149 Wash. 386] 270 P. 1022."

It is insisted that there is analogy to be found in the required element of *joint proprietary interest* and *mutual contract,* as stated in our tort actions. Such cases are rested on principles of agency that may or may not apply to a civil action touching a joint adventure. Perfection Mattress & Spring Co. v. Windham, 236 Ala. 239, 182 So. 6; Crescent Motor Co. v. Stone, 211 Ala. 516, 101 So. 49; United States Fidelity & Guaranty Co. v. Hearn, 233 Ala. 31, 170 So. 59; Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610.

The foregoing will indicate that the writer is of the opinion that petitioner may not recover on the pleading before us, that the judgment of the circuit court in overruling demurrer to Laurendine's petition for intervention was erroneous and should be reversed.

On Rehearing.

THOMAS, Justice.

There are two propositions if carefully considered are the basis on which a rehearing, with sound judgment, may be rested.

(1) The exhibits made the basis of this alleged cause of action contradict the averments of the amended pleading as to a loan of $10,000 or other sum of moneys by the bank to Laurendine. The exhibits being the foundation of the claim will control the amended pleading. Lavretta v. First National Bank of Mobile, 235 Ala. 104, 178 So. 3.

Twenty years is supposed to close the transactions of the past. Such is the gen-

eral rule, at least. On the writer's original presentation of this case to the whole court, the conflict between the exhibits and the pleading was adverted to, since the exhibits are the basis of the transactions and must control. I stated that Laurendine's right must stand or fall on the Staples letter of June 25, 1919, and on the claim he filed with the Superintendent of Banks on July 19, 1927. He cannot change the *status quo* by the subsequent pleading averring a *loan* from the bank of $10,000 or more. His averments in his amended pleading are that he borrowed the "necessary money, to-wit, approximately $10,-000.00, to enable him to carry out said agreement." Such averment is contrary to the two exhibits. The letter of Staples of June 25, 1939, is to the effect that, "In consideration of *our joining in the purchase* of the property of T. C. Barrett, deceased, and Florence E. Barrett, individually, *we will put up all the money that is necessary to clear the property from encumbrances and we will then sell said property to the best advantage,* proceeds of sale to be applied", namely, "to the return of the *principal that we have put into the property together with interest; * * *  and after the payment of all charges of any kind that might arise against the property, any profits resulting therefrom to be divided equally between us,"—which meant between Laurendine and Staples.

The claim filed by Laurendine with the Superintendent of Banks on July 19, 1927, who was administering the trust, is as follows: "I agree to purchase all of the real estate belonging to the estate for the sum of $2250.00 and the assumption by me of all of the debts of said Thomas C. Barrett." Thereafter Staples stated that "if I would give the bank the benefit of the contract which I had with Mrs. Barrett, *that the bank would put up the money to pay Mrs. Barrett* and also with which to pay the creditors of Thomas C. Barrett." That Laurendine would be authorized to manage the property and out of rents collected and proceeds of sale of the property, the bank was to be paid all moneys advanced, together with interest.

It is thus apparent that the letter of Staples to Laurendine on which the parties are alleged to have acted is contrary to the claim filed by Laurendine with the Superintendent of Banks, both of which said papers are exhibited. The subsequent pleading as to the loan of $10,000 is contrary to the purport of both of these exhibits.

(2) The decision of Brewer v. Ewart, 210 Ala. 292, 97 So. 910, was upon facts similar to the case at bar and a recovery was denied. The evidence in said case was as follows:

" 'In December, 1914, I was in the office of the defendant at his place of business on First avenue in the city of Birmingham, and he informed me that this mortgage was being foreclosed, and that he had seen a notice of the foreclosure in the Labor Advocate, a newspaper published in the city of Birmingham, Alabama. He stated to me that he did not care to buy the property, and I thereupon stated to him that, if he would buy the property for me, I would handle it, and dispose of it, and we would divide the net profits. The defendant then asked me what I thought it was worth, and I informed him that in my opinion it was worth about $10,000 to $15,-000. He then told me that Mr. Smith had informed him that the property could be bought for about $3,200. I went to the Labor Advocate office and bought the newspaper in which the advertisement was contained, which showed that the sale was set for the next week. I then went again to Mr. Brewer's office, and after talking the matter over with him he agreed to purchase the property for me at the foreclosure sale, provided no one bid in excess of $4,000, with the understanding that the property would be held until a suitable time to sell it, and that after paying him the amount of money expended by him with interest thereon, the balance derived from the sale and rents of said property to be divided equally between us.' "

The holding was:

"It is true that mutual promises are sufficient to support a joint adventure, but the promises must be *to do* something promotive of the enterprise, and not merely to share in its profits. An examination of the bill of complaint, as finally amended, discloses that it is wholly bare of any allegation that complainant was to contribute *anything whatever*—money, material, or service—to the initiation, prosecution, or conclusion of the adventure. * * *

"The net result of it all was that respondent gratuitously *agreed* to buy, hold,

628

use, and *sell the land for the joint benefit of himself and complainant*. Such a promise is not binding, and cannot be enforced either in law or equity. * * *" [Italics supplied.]

The Staples letter June 25, 1919, or the claim filed by Laurendine in 1927 was not stronger than the foregoing facts and decision, and which decision had the concurrence of Anderson, C. J., the writer and Justice Bouldin.

In the case of Simpson et al. v. Richmond Worsted Spinning Co. et al., 128 Me. 22, 145 A. 250, 254, it is said:

"The mere fact that some pay all expenses or furnish all the money used does not exclude. associates from sharing in profits. Saunders v. McDonough [191 Ala. 119, 67 So. 591], supra; Streat v. Wolf, 135 App.Div. 81, 119 N.Y.S. 779; Migel v. Heller, Hirsh & Co., 151 App.Div. 637, 136 N.Y.S. 969; Ann.Cas.1916A, 1213. But there must be some contribution by each coadventurer of money or material or service, something promotive of the enterprise. Brewer v. Ewart, 210 Ala. 292, 97 So. 910. Sharing of losses is not an essential. Keiswetter v. Rubenstein, [235 Mich. 36, 209 N.W. 154, 157, 48 A.L.R. 1049], supra, and cases cited; Jackson v. Hooper [76 N.J. Eq. 185, 74 A. 130], supra. Mere sharing of profits is not. sufficient. Atlas Realty Co. v. Galt, 153 Md. 586, 139 A. 285.

"But as by its nature joint adventure is a common undertaking or common enterprise for mutual benefit, there must be, as a general rule, community of interest and participation in the benefit or profits. McDonough et al. v. Bullock, 2 Pears. (Pa.) 191; McDaniel v. State Fair (Tex.Civ. App.) 286 S.W. 513. Contribution of money, material, or services, joint ownership or joint proprietary interest, or joint control over the subject-matter of the adventure, or the manner in which it is to be carried out, sharing of losses, sharing of profits, are evidence of the common enterprise."

We have indicated how the case fails to show (1) contribution in money, material or services, (2) joint property interest, (3) joint control over the subject-matter, (4) the manner in which it was to be carried out, (5) the sharing of losses.

In Hale v. Brown, 211 Ala. 106, 99 So. 645, the opinion was by the writer, concurred in by Anderson, C. J., Somerville and Bouldin, JJ. The decision was that, "Real-ty broker's agreement for division of commissions held not to constitute 'joint adventure.' An agreement between three realty brokers engaged in promoting an exchange of properties for a division of commissions *held* not to constitute the endeavor a joint enterprise."

I am of the opinion that the result announced is contrary to the above-mentioned well considered decisions, and does an injustice to the many beneficiaries of the trust estate being administered by the Superintendent of Banks on the instance of Laurendine more than twenty years after the date of the Staples letter. In my opinion the application for rehearing should be granted and the decision of the lower court reversed.

GARDNER, C. J., concurs.

All the other JUSTICES are of opinion that the application for rehearing should be overruled. It is so ordered.